1  James R. Hawkins, Cal Bar No. 192925
   Gregory Mauro, Cal Bar No. 222239
2  JAMES R. HAWKINS, APLC
   9880 Research Drive, Suite 200
3  Irvine, California 92618
   Telephone: 949.387.7200
4  Facsimile: 949.387.6676
   Email: james@jameshawkinsaplc.com
5          greg@jameshawkinsaplc.com

6  Attorneys for Plaintiff RICARDO I.
   GOMEZ, Individually and on Behalf of
7  Other Members of the Public Similarly
   Situated

8

9

10

11              UNITED STATES DISTRICT COURT

12     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

14  RICARDO I. GOMEZ, Individually and          Case No.2:16-cv-05572-JAK (FFM)
    on Behalf of Other Members of the           Hon. John A. Kronstadt
15  Public Similarly Situated,
                                                 CLASS ACTION
16              Plaintiffs,
                                                 NOTICE OF MOTION AND
17       v.                                      MOTION FOR CLASS
                                                 CERTIFICATION;
18  USF REDDAWAY, INC., a OREGON                 MEMORANDUM OF POINTS AND
    Corporation, and DOES 1 through 50,          AUTHORITIES IN SUPPORT OF
19  inclusive,                                   MOTION FOR CLASS
                                                 CERTIFICATION
20              Defendants.

21

22                                               Date: July 13, 2018
                                                 Time: 8:30 a.m.
23                                               Courtroom 10B

24  TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

25       PLEASE TAKE NOTICE that, on July 13, 2018, at 8:30 am or as soon

26  thereafter as may be heard in Courtroom 10B of the United States District Court for

27  the Western Division of California, located at First Street Courthouse, 350 W. First

28  Street, Courtroom 10B, Los Angeles, CA 90012, Plaintiffs Mario Barrios and Saul

                                    1

Montes will and hereby do move this Court for an order certifying the following classes:

**Class:**

All California residents employed as non exempt pick up and delivery truck drivers by Defendants in the State of California at any of Defendants' California terminals during the relevant time period who have performed work within California.

**Waiting Time Subclass:**

All Class Members whose employment was terminated at any time within three (3) years prior to the filing of the complaint in this action until resolution of this lawsuit (hereinafter collectively referred to as the "Waiting Time Subclass").

Plaintiffs further move for an order pursuant to Fed. R. Civ. P. 23(g) appointing James Hawkins, APLC, as class counsel.

This motion is made under Fed. R. Civ. P. 23(a) and 23(b)(3). This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the declarations and other evidence filed herewith, all other documents on file with the Court in this action, and any further argument as may be made at the hearing.

Respectfully submitted,

Dated: April 3, 2018                     JAMES HAWKINS APLC


By: */s/ Gregory Mauro*
JAMES R. HAWKINS, ESQ.
GREGORY MAURO, ESQ.
Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Page**

**I.     INTRODUCTION** ..................................................................... 1

**II.    FACTS** ..................................................................................... 1

    **A.     Defendant's Business** ..................................................... 1

    **B.     Defendant applied a uniform and systematic policy of automatically deducting 30-minute meal periods.** ........................... 2

    **C.     Defendant maintained a uniform policy that prevented Drivers from overriding the auto-deduction.** .................................... 3

    **D.     Defendant engaged in a uniform practice that willfully failed to re-credit worktime to Drivers who missed meal periods.** ........... 3

    **E.     Defendant did not pay premiums for missed meal periods.** ........... 4

    **F.     Defendant did not provide compliant meal periods to class members.** ............................................................... 5

    **G.     Defendant did not provide accurate wage statements or final pay to separated employees, and also violated the Unfair Competition law.** ...................................................... 6

**III.   SUMMARY OF APPLICABLE LAW** ....................................... 6

    **A.     Labor Code §§ 1194 and 1197 and IWC Wage Order 9-2001** ....... 7

    **B.     Labor Code §§ 226.7 and 512 and IWC Wage Order 9-2001** ........ 9

    **C.     Derivative Claims** ........................................................ 10

        *1.     Labor Code § 226 Violations* ...................................... 10

        *2.     Labor Code § 203 Violations* ...................................... 11

        *3.     The Unfair Business and Professions Code Section 17200 Violations* ......................................... 11

**IV.    CLASS DEFINITIONS** .......................................................... 12

    **A.     The Putative Class and Subclass** ..................................... 12

**V.     ARGUMENT** ....................................................................... 13

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

A.    **The Standards for Class Certification** ............................... 13

B.    **The Standards of Rule 23(a) Have Been Met** ................................ 14

    1.    *Numerosity and Ascertainability* ............................... 14

    2.    *Commonality* ........................................................... 15

    3.    *Typicality* ................................................................. 17

    4.    *Adequacy is Satisfied* ............................................... 18

C.    **The Standards of Rule 23(b)(3) Have Been Met** ............................ 18

    1.    *Predominance* .......................................................... 19

    2.    *Superiority* ............................................................... 22

    3.    *Manageability* .......................................................... 23

VI.    **CONCLUSION** ............................................................................ 25

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abdullah v. U.S. Security Associates, Inc.,*
    731 F.3d 952 (2013) ....................................................................... 19

*Alfred v. Pepperidge Farm, Inc.*
    322 F.R.D. 519 (C.D. Cal. 2017) ........................................... 20, 22

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ..................................................................... 23

*Arias v. Superior Court,*
    46 Cal.4th 969 (2009) ..................................................................... 7

*Armenta v. Osmose, Inc.,*
    135 Cal. App. 4th 314, (2005) ...................................................... 11

*Avilez v. Pinkerton Gov't Servs.,*
    286 F.R.D. 450 (C.D. Cal. 2012) ................................................. 11

*Ballard v. Equifax Check Servs., Inc.,*
    186 F.R.D. 589 (E.D. Cal. 1999) ................................................. 14

*Bank of the West v. Superior Court,*
    2 Cal.4th 1254 (1992) ................................................................... 12

*Bateman v. American Multi-Cinema, Inc.,*
    623 F.3d 708 (9th Cir. 2010) ....................................................... 14

*Bell v. Farmers Ins. Exchange,*
    115 Cal.App.4th 715 (2004) ......................................................... 24

*Bellinghausen v. Tractor Supply Company,*
    No. C-13-02377 JSC, 2014 WL 465907
    (N.D. Cal., Feb. 3, 2014) .............................................................. 10

*Benton v. Telecom Network Specialists, Inc.,*
    220 Cal.App.4th 701 (2013) ......................................................... 20

**Cases - Continued**

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1974) ........................................................................ 19

*Boyd v. Bank of Am. Corp.,*
    300 F.R.D. 431 (C.D. Cal. 2014) ................................................................ 23

*Bradley v. Networkers International LLC,*
    211 Cal.App.4th 1129 (2012)................................................................. 20, 21

*Brinker v. Superior Court,*
    53 Cal.4th 1004 (2012)............................................................................ 9, 10

*Bruno v. Superior Court,*
    127 Cal.App.3d 120 (1981)........................................................................ 24

*Campbell v. PricewaterhouseCoopers, LLP,*
    253 F.R.D. 586 (E.D.Cal. 2008)............................................................ 15, 23

*Comcast Corp. v. Behrend,*
    133 U.S. 1426 (2013) ............................................................................ 21, 22

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ..................................................................................... 19

*Cortez v. Purolator AirFiltration Products Co.,*
    23 Cal.4th 163 (2000)............................................................................ 11, 12

*Deutsch v. Turner Corp.,*
    324 F.3d 692 (2003) ................................................................................... 12

*Dilts v. Penske Logistics, LLC,*
    267 F.R.D. 625 (S.D. Cal. 2010)........................................................... 8, 9, 21

*Doninger v. Pac. Northwest Bell, Inc.,*
    564 F.2d 1304 (9th Cir. 1977)................................................................... 13

*Ellis v. Costco Wholesale Group,*
    657 F.3d 970 (9th Cir. 2011)..................................................................... 18

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**Cases - Continued**

*Godfrey v. Oakland Port Services Corp.,*
230 Cal.App.4th 1267 (2014)............................................................................9

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)..............................................................15, 19

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992)................................................................13, 17

*Harp v. Starline Tours of Hollywood, Inc.,*
2015 WL 4589736 (C.D. Cal. 2015)...........................................................20

*Hernandez v. Mendoza,*
199 Cal.App.3d 721 (1988)..........................................................................16

*Hudgins v. Neiman Marcus Group, Inc.,*
34 Cal.App. 4th 1109 (1995)........................................................................12

*In re Wells Fargo Home Mortg. Overtime Pay Litigation,*
571 F.3d 953 (9th Cir. 2009)........................................................................19

*Intermedics, Inc. v. Ventritex, Inc.,*
822 F. Supp. 634 (1993)................................................................................12

*Jimenez v. Domino's Pizza, Inc.,*
238 F.R.D. 241 (C.D. Cal. 2006) .................................................................14

*Kamar v. Radio Shack Corp.,*
254 F.R.D. 387 (C.D. Cal. 2008) .................................................................19

*Keegan v. Am. Honda Motor Co., Inc.,*
284 F.R.D. 504 (C.D. Cal. 2012) .................................................................13

*Leyva v. Medline Industries, Inc.,*
716 F.3d 510 (9th Cir. 2012)........................................................................19

*Morillion v. Royal Packing Co.,*
22 Cal.4th 575 (2000)......................................................................................7

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**Cases - Continued**

*Murphy v. Kenneth Cole Productions, Inc.,*
    40 Cal.4th 1094 (2007)................................................................10, 13

*Nguyen v. Baxter Healthcare Corp.,*
    275 F.R.D. 596 (C.D. Cal. 2011) ..............................................8, 20

*People v. Los Angeles Palm, Inc.,*
    121 Cal.App.3d 25 (1981)...............................................................12

*Pineda v. Bank of America, N.A.,*
    50 Cal. 4th 1389 (2010)..................................................................13

*Ricaldai v. US Investigations Services, LLC,*
    878 F.Supp.2d 1038 (C.D. Cal. 2012)...........................................10

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2010).........................................................17

*Sandoval v. M1 Auto Collisions Centers,*
    309 F.R.D. 549 (N.D. Cal. 2015) ...................................................16

*Schwartz v. Harp,*
    108 F.R.D. 279 (C.D. Cal. 1985) ...................................................17

*Singer v. Becton Dickinson & Company,*
    2009 WL 4809646 (S.D. Cal. 2009) ..............................................20

*Slaven v. B.P. Am. Inc.,*
    190 F.R.D. 649 (C.D. Cal. 2000) ...................................................14

*Smith v. Ford Motor Company,*
    749 F.Supp.2 980 (N.D. Cal. 2010) ...............................................21

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003)...........................................................15

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,*
    17 Cal.4th 553 (1988)......................................................................12

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**Cases - Continued**

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996)............................................................22

*Vaquero v. Ashley Furniture Industries, Inc.,*
    824 F.3d 1150 (9th Cir. 2016)..........................................................21

*Wal-Mart Stores, Inc. v. Dukes, U.S.,*
    131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) .............................14, 15

*Wilson v. TE Connectivity Networks, Inc.,*
    No. 14-CV-04872-EDL, 2017 WL 1758048
    (N.D. Cal., Feb. 9, 2017) ..............................................................7, 8

*Zinser v. Accuflix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001)..........................................................22

**STATUTES**

Business & Professions Code § 17200 .....................................7, 12, 16, 21

Business & Professions Code § 17208 ........................................................12

California Code of Regulations, title 8, § 11090.........................................7

Code of Civil Procedure § 338 ....................................................................13

Federal Rule of Civil Procedure, Rule 23 .......................................passim

Labor Code § 201  ..................................................................................11, 13

Labor Code § 202  .........................................................................................13

Labor Code § 203  .................................................................................passim

Labor Code § 226  ..........................................................................9, 10, 16, 21

Labor Code § 512  ............................................................................................9

Labor Code § 1194 .........................................................................................7

Labor Code § 1197 .........................................................................................7

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This is a simple case of wage theft that is eminently suited for class certification. Class members are delivery drivers whose actual work time was reduced by 30-60 minutes every day based on Defendant's policy of automatically deducting paid time for meal periods *regardless of whether the drivers actually took such breaks*. Further, Defendant did not provide meal periods and did not pay premiums for missed meal breaks. As a result of these unlawful practices, Defendant also failed to provide accurate itemized wage statements and failed to timely pay wages to its employees. Because the entire case can be resolved by analysis of Defendant's policies and records, this putative class action is ideal for certification.

### II.   FACTS

#### A.   Defendant's Business

USF Reddaway, Inc., owns a trucking and logistics company with operations throughout California. Defendant employs drivers in California who pick up and deliver goods and are assigned to one of 16 terminals in California (hereinafter, "Drivers"). (Ex. 1 Deposition of Defendant's 30(b)(6), John R. Croslin ["PMQ Croslin"] 58:11-13].) Defendant employs both union and non-union drivers but treats all drivers the same under uniform policies regardless of union membership. (Ex. 1 [PMQ Croslin 66:18-20, 67:25-68:2, 68:9-18, 89:10-22, 91:22-25, 66:18-20, 67:25-68:2, 68:9-18, 89:10-22, 91:22-25].)

Drivers punch a Kronos[1] time clock in the morning at the terminal, then track their deliveries and breaks via a handheld device during the shift and punch out at the terminal at the end of each shift. (Ex. 1 [PMQ Croslin 19:4-25, 93:7-13, 143:17-20; 144:6-25].) The reports generated by the handheld device, called "MDT Trip

---

[1] The software Defendant uses is called iSeries Timekeeper.

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Activity Reports," accurately reflect Drivers' hours, including breaks, as recorded by the Drivers. (Ex. 1 [PMQ Croslin 94:6-19; 200:1-5; 201:1-12; Compendium of Declarations, ¶¶ 3-4.) Drivers were also required to accurately record their time. (Ex. 5 ["Code of Conduct" REDGOM_001896].)

Defendant presented meal waivers to all newly hired Drivers to allow waiver of the first required meal period for shifts under six hours and waiver of the second required meal period for shifts under twelve hours. (Ex. 1 [PMQ Croslin 174:19-22].) Approximately 96% of sampled shifts are over 8 hours (Ex. 8 [Chasworth Report p. 3]), and Drivers typically work shifts of 10 to 10.5 hours. (Ex. 1 [PMQ Croslin 206:18-207:9]).

All relevant policies and practices at issue are uniform for all Drivers across California. All Drivers are paid on the same timekeeping system, used the same handheld device to record time actually worked, were paid on an hourly basis, and received the same wage statements. (Ex. 1 [PMQ Croslin 20:17-22, 67:23-25, 68:1-2, 90:4-6, 91:22-25, 92:16-25; 93:15-22; 94:6-19, 200:1-5, 201:1-12; 132:1-25]; Ex. 2 Deposition of Defendant's 30(b)(6), Trisha Whitfield ["PMQ Whitfield"] 13:25-14:16].)

## B. Defendant applied a uniform and systematic policy of automatically deducting 30-minute meal periods.

Defendant's policy requires Drivers to record meal periods on the handheld device. (Ex. 1 [PMQ Croslin 31:23-32:11].) However, ***regardless of the break times recorded,*** Defendant automatically deducted 30 minutes of work time for shifts over six hours and 60 minutes for shifts over ten hours for all Drivers. (Ex. 1 [PMQ Croslin 132:8-17, 133:1-4, 136:18-25, 137:17-24]; Ex. 2 "PMQ Whitfield" 15:19-25, 28:18-22].) In other words, the deduction was taken without inquiry into whether the employee was actually provided with a timely 30-minute uninterrupted and duty-free meal period.

A comparison of MDT Daily Trip Reports and Kronos records establishes that work time was deducted even when meal periods were not taken. Defendant's payroll PMQ walked through a representative two-week period of Plaintiff Montes' records (MDT Trip Activity Reports, iSeries Timekeeping report from Kronos, and paystub). In comparing the records, Defendant acknowledged that time for meal periods was auto-deducted off Plaintiff Montes' work time on several days when he did not record a meal period. (Ex. 2 [PMQ Whitfield 117:1-120:1].)

## C. Defendant maintained a uniform policy that prevented Drivers from overriding the auto-deduction.

In addition to the 30-minute deduction policy, Defendant also maintained a uniform policy and practice that prevented employees from reversing the deduction on any day that a 30-minute meal period was not taken. Indeed, a Driver who misses a meal period and attempts to reverse the auto-deduction is "subject to disciplinary action" (and, as discussed below, no meal period premium is paid for the missed break). (Ex. 3 ["Premium Payment Process" REDGOM_000327]; see also Ex. 4 [REDGOM_002542].) Accordingly, because any attempt by a Driver to correct the auto-deduction subjects him to discipline, there is no effective way for a Driver to correct an inaccurate deduction.

Indeed, Plaintiffs' expert identified that *99.4%* of representative shifts had more time automatically deducted than the time spent in documented meal breaks. (Ex. 8 [Chasworth Report p. 6].) In other words, 99.4% of auto-deductions were inaccurate because Drivers have no way to reverse the deductions that do not accurately reflect time spent on break.

## D. Defendant engaged in a uniform practice that willfully failed to re-credit worktime to Drivers who missed meal periods.

Because of the "auto-deduct" system, Defendant assumed that lunches were being taken, but never undertook any investigation to determine whether these assumptions were correct. Defendant's PMQ testified that the payroll department

3

does not compare the MDT Trip Activity Reports to the auto-deductions because that department does not "have access to that report. It's not part of the payroll process." (Ex. 2 [PMQ Whitfield 49:13-22].) Although the PMQ testified that the terminal managers are supposed to approve all payroll items, the managers are incentivized to turn a blind eye; the managers' inaction, i.e., failure to reverse an incorrect auto-deduction, rewards them with lower labor costs. The payroll department assumes that the approved information from each terminal is accurate without double-checking. (Ex. 2 [PMQ Whitfield 53:12-16].)

Defendant does not audit meal period deductions at the corporate level. (Ex. 2 [PMQ Whitfield 54:23-55:1].) Individual terminals are "supposed to perform" an audit of meal periods, but Defendant's PMQ had never seen such an audit report completed. (Ex. 2 [PMQ Whitfield 55:2-17].) Regardless, even if an individual terminal performed a meal period audit, Defendant's policy requires terminals to disregard any discrepancies in auto-deductions for Drivers. (Ex. 6 ["Monitoring Compliance" REDGOM_002411].)

Defendant admits that despite not having a meal recorded or a meal of less than 30 minutes on the MDT Trip Activity Report, its payroll system KRONOS still automatically deducts 30-minute of time for a meal.  (Ex. 2 [PMQ Whitfield 18:16-20; 81:8-82:7; 84:1-18].)  Defendant admits that despite having information as to when a meal was not provided or when a meal was less than 30 minutes in time, it fails to integrate KRONOS with the MDT Trip Activity Reports to account for accurate time keeping and payments to its drivers. (Ex. 2 [PMQ Whitfield 92:13-24; 93:15-19; 94:4-6].) Defendant admits that its payroll department does not have access to the MDT Trip Activity Reports even though meal period information is what is "important to payroll" for accurately paying its drivers. (Ex. 2 [PMQ Whitfield 94:4-6; 94:24-25; 101:2-8; 103:1-8].)

**E.     Defendant did not pay premiums for missed meal periods.**

As noted, the automatically deducted meal periods cannot be overridden by

4

the Drivers. Instead, the auto-deduction can be overridden only in a very narrow circumstance and only through a multi-step administrative process that cannot be initiated by the Driver. (Ex. 3 ["Premium Payment Process" REDGOM_000327].) First, a Driver's supervisor must request that the Driver skip the meal period "due to workload." Then, the manager must approve the missed meal and agree that a premium is due. (Ex. 3 ["Premium Payment Process" REDGOM_000327].) The manager must then email the payroll department, copying the Division Vice President, with specified information, including the "reason for the premium payment." (Ex. 3 ["Premium Payment Process" REDGOM_000327].) The extensiveness of this process and the involvement of high level management indicate that the process is expected to be a rare occurrence.

Defendant's payroll PMQ has never seen a request for a meal period premium come to her department. (Ex. 2 [PMQ Whitfield 104:16-105:23].) Defendant's PMQ explained that she has never seen a meal period premium paid but such premiums "could be" entered as regular time by the terminals. (Ex. 2 [PMQ Whitfield 56:18-57:2].) Defendant terminal managers do not follow protocols for meal period premiums. (Ex. 2 [PMQ Whitfield 60:2-20; 109-22-25; 110:1-6].) Defendant's PMQ further admits that despite requiring meal periods be recorded on the MDT Trip Activity Report, the timekeeping system KRONOS used for payroll does not have a way to determine when a meal was not recorded. [Ex. 2 [PMQ Whitfield 74:12-17; 91:12-16].) Defendant also agrees that a lunch less than 30 minutes is a violation yet no meal period premiums are paid. [Ex. 2 [PMQ Whitfield 108:3-9].

In fact, Plaintiffs' expert could find no evidence of payment of meal period premiums, even paid as straight wages. (Ex. 8 [Chasworth Report p. 6].)

**F.    Defendant did not provide compliant meal periods to class members.**

Plaintiffs' expert determined that, from the representative sample of 10% of

Driver payroll and time records, 88.2% of shifts had a non-compliant meal period, i.e., either lacked a meal break of at least 30 minutes during the first five hours of work and/or lacked a second meal break of at least 30 minutes for shifts in excess of ten hours of work. (Ex. 8 [Chasworth Report p. 1].) Until 2017, Defendant did not schedule breaks for Drivers. (Ex. 1 [PMQ Croslin 27:6-28:10].) According to dozens of class members, meal period violations occurred because of their assigned workloads and the pressure to make deliveries and pickups. (Compendium of Declarations ¶ 4.)

**G.      Defendant did not provide accurate wage statements or final pay to separated employees, and also violated the Unfair Competition law.**

All Drivers are provided with the same format of wage statements. (Ex. 1 [PMQ Croslin 90:4-6].) Defendant's payroll PMQ agrees that its wage statements do not identify meal period premiums because Defendant does not use a pay code for meal period premiums. (Ex. 2 [PMQ Whitfield 72:10-16; 85:5-13].) Further, wage statements reflect workhours as deducted by KRONOS, not the hours actually worked. Accordingly, all class members necessarily receive inaccurate wage statements.

Further, Defendant's uniform policies regarding automatically deducting time for meal periods and failing to pay any meal period premiums necessarily result in a failure to pay all wages due upon employment separation.

Finally, Business and Professions Code §17200 provides that if a defendant has engaged in unlawful, unfair and/or fraudulent business acts or practices, employees can obtain restitution for such violations. As such, Defendant's uniform policies that resulted in unpaid wages and meal period violations also support the Unfair Competition claim under § 17200.

**III.   SUMMARY OF APPLICABLE LAW**

Plaintiffs allege two substantive causes of action: (1) the First Cause of

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Action for Failure to Pay Wages; and (2) the Second Cause of Action for Failure to Provide Meal Periods. (TAC [Dkt. No. 56] ¶¶ 46-60.) Plaintiffs' Fourth, Sixth, and Seventh Causes of Action for Failure to Provide Accurate Employee Itemized Wage Statements, Failure to Timely Pay Wages, and Violations of the California Unfair Competition Law are derivative of the first two claims.[2] (TAC [Dkt. No. 56] ¶¶ 46-60.)[3]

Plaintiffs' claim for Failure to Pay Wages rests on Defendant's undisputed policy and practice of automatically deducting a half-hour from every putative class member's time, per day, for a meal period, regardless of whether the employee actually took a meal period. Plaintiffs' claim for Failure to Provide Meal Periods is based on Defendant's policies uniformly discouraged and/or prevented Plaintiffs from taking meal breaks. Plaintiffs' claim for Failure to Provide Accurate Itemized Wage Statements is derivative of the claim that the auto-deduction of time that resulted in inaccurate wage statements. Similarly, Defendant's failure to pay all wages when due subjects it to waiting time penalties under Labor Code § 203. Finally, these unfair and unlawful practices also support Plaintiff's claim under Business & Professions Code § 17200.

**A.    Labor Code §§ 1194 and 1197 and IWC Wage Order 9-2001**

An employer must pay at least minimum wage to its employees for all hours worked, meaning all time that the employee is subject to the employer's control or is suffered or permitted to work. *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 584-585 (2000); Cal. Code Regs., tit. 8, § 11090. The right to be paid the minimum wage is not waivable. Cal. Labor Code § 1194.

---

[2] Plaintiffs are not seeking certification of the Third and Fifth Causes of Action.
[3] Plaintiff Montes has also been appointed as the State of California's Private Attorney General to pursue penalties on behalf of the State. California law does not require  class certification of the PAGA to proceed as a representative action for the State of California. *Arias v. Superior Court*, 46 Cal.4th 969, 980 (2009).

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

So-called auto-deduct classes are commonly certified. Most recently, in *Wilson v. TE Connectivity Networks, Inc.,* No. 14-CV-04872-EDL, 2017 WL 1758048, at *11 (N.D. Cal., Feb. 9, 2017), the court certified an auto-deduct class where the defendants automatically deducted 30 minutes for a meal break each workday. Although "supervisors ha[d] the discretion to override this automatic deduction if they 'become aware' that employees did not, in fact, take a 30-minute break," the plaintiff showed that employees did not know to notify their supervisors if they missed their meal breaks. *Id.* Further, the defendants had never paid a meal period premium for a missed break, and an automatically deducted meal period had been overridden on only one occasion. *Id.* Accordingly, the court held that certification was proper because common questions predominated.

Two auto-deduct cases that were certified are substantially similar to the circumstances here. First, in *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 596 (C.D. Cal. 2011), the employer "used software which automatically deducted one 30 minute meal break per shift from all employees' time, without regard to whether a first meal break was late or missed, or whether a second meal break was required on a shift of more than 10 hours." *Id.* at 600. The court certified this class of employees because the employer's software automatically deducted one meal break "per shift from all employees' time, without regard to whether a first meal break was late or missed, or whether a second meal break was required on a shift of more than 10 hours." *Id.* Further, the defendant had not paid a missed meal premium. *Id.* at 601. And the written policy regarding meal breaks was identical for all class members. *Id.*

Similarly, in *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010), the court found that common questions predominated. *Id.* at 635. It stated:

> The ultimate underlying factual issue is the existence of the thirty minute auto-deduct. If class members were not paid for time they actually worked, then Defendant is liable. And there is no question that

Defendant deducted thirty minutes per day regardless of whether a break was taken. Thus, the common issues predominate over the individual issues on the question of liability.

*Id.* The court based this conclusion on the fact that "Defendant's corporate representative could not identify a single instance during the class period where an 'auto-deduction' was reversed, nor was he aware of whether the capability of a manual override was ever communicated to employees or on-site managers. Nor has Defendant ever paid a[n] additional hour of compensation to any class member in lieu of missed lunch break." *Id.* (citations omitted). Accordingly, the court concluded that certification was appropriate. Here, despite having accurate access to information about meal periods, or lack thereof, Defendant failed to integrate its payroll system with its MDT Trip Activity system to accurately pay its drivers. Such common practices resulted in the failure to accurately compensate its drivers.

## B.     Labor Code §§ 226.7 and 512 and IWC Wage Order 9-2001

Meal breaks for transportation company employees are governed by wage order No. 9–2001, issued by the Industrial Welfare Commission (IWC), encoded as California Code of Regulations, title 8, § 11090.[4] *Godfrey v. Oakland Port Services Corp.,* 230 Cal.App.4th 1267, 1274 (2014). An employer must, in general terms, provide a 30–minute meal break in the first five hours of the workday and 10–minute rest periods in the middle of each four-hour period of work. Cal.Code Regs., tit. 8, § 11090, subds. 11(A), (C), 12(A); Labor Code § 226.7(b).) Labor Code § 226.7(c) provides, "If an employer fails to provide an employee a meal period, the employer shall pay the employee one hour of pay for each workday that the meal period is not provided."

An employer's obligation under § 512 and the IWC Wage Order 9 to provide a meal period to its employees is satisfied only if it relieves its employees of all

---

[4] The IWC's wage orders are to be accorded the same dignity as statutes. *Brinker v. Superior Court,* 53 Cal.4th 1004, 1026 (2012).

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. *Brinker v. Superior Court,* 53 Cal.4th 1004, 1040 (2012).

Here, liability turns on the issue of whether Defendant's policy of not paying a meal period premium for any missed break that was not requested by a supervisor was legal. Thus, this question is eminently suited for class treatment. *Brinker*, 53 Cal.4th at 1033.

### C.    Derivative Claims

An employer's failure to pay minimum wages for all hours worked gives rise to liability not only for unpaid wages and premiums, but also for failure to properly record hours worked, for waiting time penalties, and for unfair competition. Under Labor Code § 226(a) an employer is required to provide accurate wage statements, and under section 226(e)(1) is subject to statutory penalties for knowing and intentional failure to do so.

#### 1.    *Labor Code § 226 Violations*

Labor Code Section 226(a)[5] requires employers to keep accurate records and provide itemized wage statements every pay period, which include: (1) gross wages earned, (2) total hours worked … (5) net wages earned, … and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the. Meal period premiums are wages pursuant to the California Supreme Court's holding in *Murphy v. Kenneth Cole Productions, Inc.*, 40  Cal.4th 1094 (2007), is deemed as a ***wage***, and not a penalty. *Id*. at 1114. If an

---

[5] In addition to the failure to accurately pay wages due to the auto deduction, Labor Code § 226.7 premiums should qualify as wages that are governed by the requirements of Labor Code § 226. Labor Code § 226.7 premiums constitute wages and are therefore required to be included in wage statements under Labor Code § 226. *Bellinghausen v. Tractor Supply Company,* No. C-13-02377 JSC, 2014 WL 465907, at *8 (N.D. Cal., Feb. 3, 2014).

employer fails to provide appropriate meal breaks - a violation of Section 226.7 - and also fails to record the premium accrued as a result of this Section 226.7 violation, the employer has not kept accurate records and so also violates Section 226(a). *Ricaldai v. US Investigations Services, LLC,* 878 F.Supp.2d 1038, 1047 fn.4 (C.D. Cal. 2012) (noting that "[i]f [plaintiff] succeeds on her meal period claim, [defendant] further violated [California Labor Code] Section 226 by failing to include premium pay for each missed meal period"); s*ee also Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450 (C.D. Cal. 2012). The same would hold true here, where the auto deduct policy robbed the drivers of time, which was not identified accurately on the wage statements and where Defendant has admitted to not paying and identifying premiums on wage statements as required by law.

## 2. *Labor Code § 203 Violations*

California law requires that all employees be timely paid upon the end of employment. Cal. Lab. Code §§ 201 *et seq*. Where an employer willfully fails to pay wages due and owing in accordance with the relevant sections of the Labor Code, Labor Code § 203 provides for a penalty of continued payment of wages up to 30 days from the time wages were due. Cal. Lab. Code § 203(a). *seq*. Common questions that predominate include whether Defendant timely pays terminated employees all wages owed, whether the last day of work assignment is the date of termination, and whether Defendant's policy of suspending employees without pay until their final paycheck arrives is an attempt to evade the mandates of Labor Code §§ 201-203.

Certification is warranted here, where all drivers are affected by Defendant's failure to timely pay wages due upon termination. *See Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325-352 (2005) (finding waiting time penalties due under Labor Code § 203 where employees claimed failure to pay wages and minimum wages).

## 3. *The Unfair Business and Professions Code § 17200 Violations*

11

An employer's repeated violations of wage and hour laws is deemed an "unfair" practice and will support a claim under California Business & Professions Code §§17200, *et seq.  Cortez v. Purolator AirFiltration Products Co.,* 23 Cal.4th 163 (2000). Plaintiff's  class claims under § 17200 are predicated on Defendant's underlying failure to pay wages and meal violations. If Plaintiff's wage claims are proven, then the Class may be entitled  to additional remedies pursuant to B&PC §17200, such as restitution. *Cortez*, 23  Cal.4th at 177. The California Supreme Court in *Cortez* also makes it clear that  "unlawfully withheld wages are property of the employee within the contemplation of  the UCL [unfair competition law]." *Id.* at 178. Plaintiffs' Cause of Action for  violations of B&PC §§17200, *et seq.* also requires liberal construction and application  in light of its broad remedial goals. *Bank of the West v. Superior Court,* 2 Cal.4th  1254 (1992); *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 17 Cal.4th 553 (1988). California's labor laws are included within the Unfair Competition Act. *Hudgins v. Neiman Marcus Group, Inc.,* 34 Cal.App. 4th 1109 (1995); *People v. Los Angeles Palm, Inc.*,121 Cal.App.3d 25 (1981). If Plaintiffs' wage claims are proven, then the class also has a claim for restitution for unpaid wages.

## IV.    CLASS DEFINITIONS

### A.    The Putative Class and Subclass

Plaintiffs request certification of the following class:

All California residents employed as non exempt pick up and delivery truck drivers by Defendants in the State of California at any of Defendants' California terminals during the relevant time period who have performed work within California.[6]

---

[6] The relevant time period is four years from the filing of the complaint which is May 13, 2012, through the present. Business & Professions Code § 17208 imposes a four year statute of limitations for claims of unfair business practices as alleged herein. *Intermedics, Inc. v. Ventritex, Inc.,* 822 F. Supp. 634, 646 (1993); *Deutsch v. Turner Corp.,* 324 F.3d 692, 717 (2003).

In addition, Plaintiffs request certification of the following subset of the principle class (hereinafter collectively referred to as the "Waiting Time Subclass"):

> All Class Members whose employment was terminated at any time within three (3) years prior to the filing of the complaint in this action until resolution of this lawsuit.[7]

## V. ARGUMENT

### A. The Standards for Class Certification

Federal Rule of Civil Procedure 23 governs class actions. Fed. R. Civ. P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)). The party may not rest on mere allegations but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977). Although not mentioned in Rule 23(a), the moving party must also demonstrate that the class is ascertainable. *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012).

After satisfying these five prerequisites, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2)

---

[7] The relevant time period for this claim is three years from the filing of the complaint which is May 13, 2013, to the present. Actions for final wages not paid as required by §§ 201 and 202 are governed by Code of Civil Procedure § 338 (a), which provides that a three-year statute of limitations applies to "[a]n action upon a liability created by statute, other than a penalty or forfeiture." *Pineda v. Bank of America, N.A.,* 50 Cal. 4th 1389, 1398 (2010); *Murphy v. Kenneth Cole Productions, Inc.,* 40 Cal. 4th 1094 (2007).

the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Fed. R. Civ. P. 23(b)(1-3).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). However, a party seeking class certification must affirmatively demonstrate compliance with Rule 23, that is, the party must be prepared to prove that there are in fact sufficiently numerous parties and common questions of law or fact. *Wal-Mart Stores, Inc. v. Dukes*, U.S., 131 S. Ct. 2541, 2550-51, 180 L. Ed. 2d 374 (2011). This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id*.

**B.    The Standards of Rule 23(a) Have Been Met**

*1.    Numerosity and Ascertainability*

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. See Fed. R. Civ. P. 23(a)(1). Additionally, there is no particular number cut-off, as the specific facts of each case may be examined. *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 594 (E.D. Cal. 1999).

According to Defendant, there are 1372 class members. (Ex. 7, Def. Supp. Responses to Interrogatories, No. 1; Ex. 1 [PMQ Croslin 52:12-14, 53:2].) This easily satisfies the numerosity requirement. *E.g.*, *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 247 (C.D. Cal. 2006) (holding that a proposed class of employees challenging exemption met the numerosity requirement where it was at least 160 members); *Slaven v. B.P. Am. Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("The Ninth Circuit has not offered a precise numerical standard; other District Courts have, however, enacted presumptions that the numerosity requirement is satisfied

14
MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

by a showing of 25-30 members.").

Further, membership in the class is readily ascertainable. *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D.Cal. 2008) (it must be "'administratively feasible' for the court to determine individual class membership"). All proposed class members are determinable directly from Defendant's own records by objective criteria, i.e., Drivers in California during the relevant time period.

### 2. Commonality

Courts have construed Rule 23(a)(2)'s commonality requirement permissively. *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*. (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Still, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 131 S. Ct. at 2551 (citation omitted). The "claims must depend on a common contention" and "[t]hat common contention...must be of such a nature that it is capable of class-wide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Here, all policies and practices at issue are uniform for all Drivers across California. Defendant confirmed that all Drivers are paid the same, paid on the same timekeeping system, used the same handheld device to record time actually worked, were paid on an hourly basis, and were subject to the same policies regardless of union membership.

Regarding the auto-deduction claim, Defendant's policy affects all class members: **Defendant automatically deducts meal period(s) from each day's**

**paid time regardless of whether a meal period was taken.** The overriding common legal question highlighted by Plaintiffs is the legality of Defendant's auto-deduct policy. Both liability and damages can be established through Defendant's records. A comparison of MDT Daily Trip Reports, Kronos and pay records will establish that work time was deducted even when meal periods were not taken, showing both unpaid wages and the amount of wages owed.

For the meal period claim, common contentions are capable of class-wide resolution. Liability will hinge on whether Defendant's policy of not paying meal period premiums for missed meal periods except in a narrow circumstance is legal. This claim is subject to common documentary proof of every class member who missed a meal period and was not paid a premium. Although Defendant will likely contend that a failure to record premiums does not establish that such premiums were not paid, "where the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee." *Hernandez v. Mendoza,* 199 Cal.App.3d 721, 727 (1988).

Plaintiffs can also prove that missed meal periods were caused by Defendant's uniform policies by common proof applicable to the class and without need for individual inquiry. This proof includes Defendant's policies of not paying meal period premiums, as well as representative testimony regarding Defendant's practice of pressuring Drivers to forego meal periods.

If Plaintiffs prove the auto-deduct and meal period premium policies are unlawful, there is no dispute that Defendant's Drivers' wage statements were inaccurate , their final paychecks were insufficient, and that this underlying conduct violated Business & Professions Code § 17200.

Regarding wage statement, under § 226, subdivision (e)(2)(B)(i) clarifies that injury arises from defects in the wage statement, rather than from a showing that an individual experienced harm as a result of the defect. *Sandoval v. M1 Auto Collisions Centers*, 309 F.R.D. 549, 568 (N.D. Cal. 2015) [whether defendants'

1  statements were inaccurate and injured plaintiffs under Lab. Code, § 226 presents

2  common questions].)

3       And under § 203, the only legal and factual issue to resolve will be whether

4  the failure to pay was "willful"—a question which will be determined on a class-

5  wide basis, given that it simply turns on whether Defendant can establish any good

6  faith defense to justify its uniform failure to pay all wages due.

7            3.    *Typicality*

8       Typicality is assessed under Rule 23(a)(3) by determining whether other

9  members have the same or similar injury, whether the action is based on conduct

10 which is not unique to the named plaintiffs, and whether other class members have

11 been injured by the same course of conduct. *Hanon*, 976 F.2d at 508 (quoting

12 *Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

13      Plaintiffs' claims are typical of the class because they worked as Drivers

14 during the class period and were subject to the auto-deduct and meal period policies

15 that improperly resulted in unpaid wages and meal break violations. (Barrios Decl.

16 ¶ 4; Montes Decl. ¶ 4.) Both Plaintiffs suffered unpaid wages because of the auto-

17 deduct policy, and both Plaintiffs were not permitted meal periods and were not

18 paid meal period premiums. (Barrios Decl. ¶ 4; Montes Decl. ¶ 4.) Moreover,

19 because Barrios separated from Defendant's employ during the class period, his

20 claims are typical of the Waiting Time Subclass regarding waiting time penalties

21 under § 203.

22      Further, should the class need to be divided into union and non-union

23 members for any reason, each class has a named representative. Montes worked as

24 a union Driver, and Barrios was non-unionized. (Barrios Decl. ¶ 2; Montes Decl. ¶

25 2.) Accordingly, all class members are ensured adequate representation. *Staton.*,

26 327 F.3d at 957 (certifying classes including non-union and union employees where

27 each was represented by a named plaintiff).

28      Because "each class member's claim arises from the same course of events,

17

and each class member makes similar legal arguments to prove the defendant's liability," *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010), typicality is satisfied.

### 4.   *Adequacy is Satisfied*

Under Rule 23(a)(4), the named plaintiff must be deemed capable of adequately representing the interests of the entire class, including absent class members. *See* Fed. R. Civ. P. 23(a)(4) (requiring "representative parties [who] will fairly and adequately protect the interests of the class").

The adequacy inquiry turns on: (1) whether the named plaintiff and class counsel have any conflicts of interest with other class members and (2) whether the representative plaintiff and class counsel can vigorously prosecute the action on behalf of the class. *See Ellis v. Costco Wholesale Group*, 657 F.3d 970, 985 (9th Cir. 2011).

Plaintiffs are not aware of any conflicts between themselves and the proposed class, and they have both agreed to put the interests of the Class Members before their own interests. (Barrios Decl. ¶ 8; Montes Decl. ¶ 8.) Plaintiffs are adequate class representatives because they have personal experience with the claims of the lawsuit and are familiar with the underlying facts. (Barrios Decl. ¶ 7; Montes Decl. ¶ 7.) Plaintiffs commit to participating in the litigation to its resolution. (Barrios Decl. ¶ 9; Montes Decl. ¶ 9.) Plaintiff's counsel, James Hawkins and Gregory Mauro of James Hawkins APLC have experience in California wage-and-hour class actions suits and have been found to be qualified class counsel by numerous courts. (Hawkins Decl. ¶¶ 2-10, Mauro Decl. ¶¶ 3-9.)

## C.   The Standards of Rule 23(b)(3) Have Been Met

Of the three possible bases for certification under Rule 23(b), Plaintiff seeks certification under Rule 23(b)(3) which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods

18

for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The Ninth Circuit has made clear that predominance is met where common questions of liability are present and damages can be feasibly and efficiently calculated. *See, e.g.*, *Leyva v. Medline Industries, Inc.,* 716 F.3d 510, 514 (9th Cir. 2012) (finding predominance where wage and hour claims presented common legal questions and damages could be calculated using company documents and testimony); *Abdullah v. U.S. Security Associates, Inc.,* 731 F.3d 952, 964-67 (2013) (predominance satisfied where plaintiffs' claims would prevail or fail in unison given the common legal questions and ability to calculate class damages). Where, as here, the claim asserted by a proposed class is based upon a consistent employer practice, class certification is usually appropriate. *Kamar v. Radio Shack Corp.,* 254 F.R.D. 387, 399 (C.D. Cal. 2008); *see Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1974) (affirming order granting class certification where "the process of computing individual damages will be virtually a mechanical task").

### 1. Predominance

The analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)." *Hanlon*, 150 F.3d at 1022. "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id*. Rule 23(b)'s requirement that common issues of law or fact predominate over individual issues is similar to, but more stringent than, Rule 23(a)'s commonality requirement. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("Rule 23(b)'s predominance criterion is even more demanding than Rule 23(a). . . . Rule 23(b) requires that courts 'take a "close look' at whether common questions predominate over individual ones.") (citation omitted). The focus in the predominance inquiry is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 957 (9th Cir. 2009) (quotation omitted). Class certification under Rule 23(b)(3) is proper when common questions present a

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

significant portion of the case and can be resolved for all members of the class in a single adjudication. *Hanlon*, 150 F.3d at 1022.

Not surprisingly, courts have recognized that auto-deduct claims are amenable to class treatment because of the predominate common issue of the legality of the auto-deduct policy. *Nguyen*, 275 F.R.D. at 601 (certifying class where the defendant "used software which automatically deducted one thirty minute meal break per shift from all employees' time without regard to whether a first meal break was late or missed"); *Harp v. Starline Tours of Hollywood, Inc.*, 2015 WL 4589736, at *6 (C.D. Cal. 2015) (conditionally certifying FLSA class based on allegations of automatically deducting a thirty minute meal period); *Singer v. Becton Dickinson & Company,* 2009 WL 4809646 *6 (S.D. Cal. 2009) (predominance existed for settlement class based uniform policy of automatically deducting 30 minutes for a meal break). The result should be no different here.

Similarly, Defendant's failure to provide meal breaks and failure to pay premiums for missed breaks are the result of a common policy, the legality of which is a predominating common issue. *E.g.*, *Bradley v. Networkers International LLC*, 211 Cal.App.4th 1129, 1150 (2012) (reversing denial of class certification where plaintiffs were "challenging the fact that that employer's lack of a policy violated the law" and finding that "the employer engaged in uniform companywide conduct that allegedly violated state law"); *Benton v. Telecom Network Specialists, Inc.,* 220 Cal.App.4th 701, 725 (2013) (reversing order denying certification where defendant had no meal or rest break policy or procedures to ensure that employees received meal and rest breaks.)

Plaintiff anticipates that Defendant will argue that individualized questions surround the issue of why Drivers did not take meal periods. However, as this Court has held, "when an employer has not authorized and not provided legally-required meal and/or rest breaks, the employer has violated the law and the fact that an employee may have actually taken a break or was able to eat food during

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

the work day does not show that individual issues will predominate in the litigation." *Alfred v. Pepperidge Farm, Inc.* 322 F.R.D. 519, 549 (C.D. Cal. 2017) (quoting *Bradley,* 211 Cal.App.4th at 1151).

Defendant has uniform practices and policies that resulted in Labor Code violations. There is no dispute that Defendant uniformly deducts time from each worker's hours without regard to whether such deduction is proper. There is also no dispute that Defendant uniformly does not pay meal period premiums for missed meal breaks. These policies apply to all Drivers and need no individual proof to establish.

The conclusion is the same for the derivative claims, i.e. the claim for waiting time penalties under Lab. Code § 203, for inaccurate wage statements under Lab. Code § 226(a), and the claim for restitution under Bus. & Prof. Code § 17200. Claims for waiting time penalties under Labor Code § 203 and for inaccurate wage statement penalties under Lab. Code § 226 are derivative of the underlying wage-and-hour claim and therefore, if Plaintiff's other claims can be tried on a class-wide basis, these claims are also ripe for class adjudication. *Dilts,* 267 F.R.D. at 640. UCL unlawful business practice claims are also derivative of the underlying wage and hour claim. *Smith v. Ford Motor Company,* 749 F.Supp.2 980, 997 (N.D. Cal. 2010) (claim brought under unlawful prong of UCL rises or falls with underlying statutory claim). Therefore, because common issues predominate for the auto-deduct and meal period claims, they necessarily predominate for the derivative claims, and those claims should be certified as well.

Finally, as the Ninth Circuit has recently reaffirmed, in a wage and hour case, the potential need for damages to be established on an individual basis does not defeat predominance and therefore is not a basis for denying class certification. *Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150 (9th Cir. 2016). In *Vaquero,* the defendant in a wage and hour case argued that under the United States Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 U.S. 1426 (2013),

predominance does not exist if damages calculations cannot be performed on a group basis. The Ninth Circuit explained that this was a misreading of *Comcast*, which held that the predominance determination requires that plaintiffs show all class members' damages stemmed from the defendant's conduct, not that that individualized damage inquiries defeat predominance. *Id.* at 1154. "In a wage and hour case, unlike in an antitrust class action, the employer-defendant's actions necessarily caused the class members' injury. … Therefore, even if the measure of damages proposed here is imperfect, it cannot be disputed that the damages … stemmed from Defendants' actions." *Id*. at 1155.

Accordingly, even though class members may have individualized damages, that does not defeat certification. Defendant's own pay policies and corporate payroll records provide a reliable evidentiary foundation upon which all the claims in this case can and should be tried. As explained by Plaintiffs' expert, if he is provided complete data, both liability and damages can be managed through analysis of Defendant's records. (Ex. 8 [Chasworth Report p. 2].) In other words, the same records that show whether work time was deducted from class members' pay and whether meal periods were missed/premiums were paid will also reveal the damages owed when compared to class members' actual time records.

### 2. Superiority

Rule 23(b)(3) requires the Court to find "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. 23(b)(3). The superiority requirement tests whether "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *Zinser v. Accuflix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). The superiority element looks at whether there is pending similar litigation, whether class members have any interest in individually controlling separate actions, and the possible result of multiple actions. *Alfred*, 22 F.R.D. at 551.

Here, Plaintiffs are not aware of any similar litigation. There is no evidence that individual class members have any interest in individually controlling their cases. The damages suffered by each class member are not large, "class members may fear reprisal in pursuing individual claims against their employer," and "individual litigation against a well-funded defendant would be cost prohibitive." *Campbell v. PricewaterhouseCoopers*, *LLP*, 253 F.R.D. 586, 605 (E.D. Cal. 2008). Further, multiple actions would be costly, inefficient, and could lead to conflicting results. The class involves only California employees, making this forum appropriate and desirable.

A class action is, therefore, a superior method of resolving the Class Members' claims because it will "achieve economies of time, effort, and expense… without sacrificing procedural fairness or bringing about other undesirable results." *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 444 (C.D. Cal. 2014)(quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). In conclusion, Plaintiffs have met the burden of demonstrating that the class satisfies the requirements of Rues 23(a) and 23(b)(3).

### 3.   Manageability

Liability and damages in this case can be tried based upon the common facts and polices related to the claims and based on Defendant's own objective business records. Plaintiff's theories of liability – that Defendant has uniform policies regarding auto-deductions, meal periods, and meal period premiums that were uniformly implemented – by their nature involve common questions eminently suited for class treatment. Through objective testimony and documentary evidence, Class treatment is warranted.

Liability will be determined by Defendant's own corporate records and witness testimony, which show which Class Members suffered an auto-deduction when no meal break was taken and whether a meal period premium was paid. Liability for missed meal periods can be established through the MDT Trip Activity

Reports and representative testimony. And the "willfulness" prong for § 203 liability will be demonstrated through Defendant's testimony that, even though Defendant had accurate records showing when meal breaks were taken, Defendant failed to pay unpaid wages under the auto-deductions and meal period premiums for missed breaks.

Total damages for the class members will also be determined from these records. For the auto-deduction claim, damages will be assessed by evaluating the time that was auto-deducted compared to the time that was actually spent on meal periods. For the meal period claim, damages will be assessed based on the number of short or non-existent meal periods recorded. And the derivative claims' damages will be based on the number of wage statements that were inaccurate, the number of employees who suffered violations and separated from employment during the class period, and the total restitution owed after comparing the time actually worked with the time that was compensated.

It is well established that Plaintiffs need not prove each individual Class Member's damages, but instead can prove aggregate class damages. "Due process does not prevent calculation of damages on a classwide basis. The Supreme Court has assumed the use of such a method. In many cases such an aggregate calculation will be far more accurate than summing all individual claims." *Bruno v. Superior Court,* 127 Cal.App.3d 120, 129 fn. 4 (1981). The court in *Bell v. Farmers Ins. Exchange,* 115 Cal.App.4th 715, 749-53 (2004) held that establishing "aggregate proof of the defendant's monetary liability promotes the deterrence objectives of the substantive laws underlying the class actions and promotes the economic and judicial access for small claims objectives of Rule 23." As explained in Plaintiff's expert's report, aggregate damages can be calculated based on Defendant's records. (Ex. 7.)

Plaintiff's claims are well suited for class treatment. Plaintiff's liability trial plan is to present the policy documents, 30(b)(6) testimony, and expert testimony

explained herein, and the damages trial plan relies exclusively on expert testimony comparing time and payroll records for comparison of damages for class members on a class wide basis. No individualized testimony or class member sampling will be required.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for class certification.

Dated: April 3, 2018                                    JAMES R. HAWKINS APLC

By:/s/ Gregory Mauro
JAMES R. HAWKINS, ESQ.
GREGORY MAURO, ESQ.
Attorneys for Plaintiffs

MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## CERTIFICATE OF SERVICE

State of California          )
                             )     SS
County of  Orange            )

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to this action. My business address is: 9880 Research Drive Suite 200, Irvine, CA 92618.

I hereby certify that on April 3, 2018 I served on the interested parties in this action the following document(s) entitled:

- **NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**
- **COMPENDIUM OF PUTATIVE CLASS MEMBER DECLARATIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
- **DECLARATION OF JAMES R. HAWKINS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
- **DECLARATION OF GREGORY MAURO IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
- **DECLARATION OF CLASS REPRESENTATIVE SAUL MONTES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
- **DECLARATION OF CLASS REPRESENTATIVE MARIO BARRIOS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

[  ] by placing [  ] the original [  ] a true copy thereof enclosed in a sealed envelope addressed as follows:

SERVICE LIST
Pankit J. Doshi, Esq.
Ronald J. Holland, Esq.
McDermott, Will & Emery LLP
275 Middlefield Road Suite 100
Menlo Park, CA 94025-4004

[XX] By electronic service the above documents were electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the above interested parties.

 [XX] (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California and The United States of America that the above is true and correct.

Executed on April 3, 2018 at Irvine, California.

*/s/Nicole Miccolis*
Nicole Miccolis

---

CERTIFICATE OF SERVICE