1   RONALD J. HOLLAND, Cal. Bar No. 148687
2   rjholland@mwe.com
    PANKIT J. DOSHI, Cal. Bar No. 231369
3   pdoshi@mwe.com
4   LAUREN A. ZIEGLER, Cal. Bar No. 293189
    lziegler@mwe.com
5   McDERMOTT WILL & EMERY LLP
6   275 Middlefield Road, Suite 100
    Menlo Park, CA 94025-4004
7   Telephone:  (650) 815-7400
8   Facsimile:   (650) 815-7401

9   Attorneys for Defendant
10  USF REDDAWAY INC.

11              **UNITED STATES DISTRICT COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA**

13

14  RICARDO GOMEZ, SAUL              CASE NO. 2:16-cv-05572-JAK (FFM)
    MONTES, individually and on behalf
15  of all others similarly situated,     **DEFENDANT USF REDDAWAY**
                                          **INC.'S OPPOSITION TO**
16              Plaintiffs,               **PLAINTIFFS' MOTION FOR**
                                          **CLASS CERTIFICATION; AND**
17        v.                              **OPPOSITION TO PLAINTIFFS'**
                                          **SUPPLEMENTAL MOTION FOR**
18  USF REDDAWAY, INC., an Oregon         **CLASS CERTIFICATION**
19  Corporation, and DOES 1-50.
    inclusive,                            **Date:        September 17, 2018**
20                                        **Time:        8:30 am**
                Defendant.                **Courtroom:  10B**
21                                        **Judge:       Hon. John A. Kronstadt**
22

23

24

25

26

27

28

McDermott Will & Emery
Attorneys At Law
Menlo Park

## Table of Contents

**Pages**

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 1

    A.    Defendant USF Reddaway Inc. ........................................................ 1

        1.    P&D Drivers .......................................................................... 1

        2.    Reddaway Maintains Compliant Meal Break Policies ............... 2

        3.    Reddaway's Kronos Time Keeping System .............................. 3

        4.    The Handheld Device Is Unreliable ......................................... 6

III.  LEGAL ARGUMENT .................................................................................. 8

    A.    All Union Putative Class Members' Meal Break Claims Are Barred By Cal. Lab. Code § 512(e) And (f) .................................................... 8

    B.    Individualized Issues Predominate The Auto-Deduct Claim ............. 9

        1.    Plaintiffs Mischaracterize Reddaway's Timekeeping System .. 10

        2.    There Is No Common Practice Amongst The Terminals In Managing The Auto-Deduct Feature and its Cancellation ........ 10

        3.    Plaintiffs Fail To Proffer Any Reliable Evidence Capable of Resolving Their Auto-Deduct Claim On A Classwide Basis ... 11

        4.    The Auto-Deduct Cases Plaintiffs Rely On Are Inapposite ...... 12

    C.    Individualized Inquiries Predominate The Meal Break Claim ............ 14

        1.    Drivers Were Taking But Not Recording Meal Breaks ............ 14

        2.    Plaintiffs Mischaracterize the Law Regarding Meal Breaks ..... 16

        3.    Plaintiffs Have Not Established An Unlawful Practice ............. 16

        4.    Plaintiffs' Claim Cannot Be Resolved On A Classwide Basis . 18

    D.    Individualized Issues Predominate The Meal Premium Claim .......... 20

    E.    Plaintiffs' Meal Breaks Claims Are Atypical Of The Putative Class .. 21

    F.    Plaintiff Montes Is An Inadequate Class Representative ................... 23

    G.    A Class Action Here is Neither Superior Nor Manageable ................ 23

    H.    Plaintiffs' Derivative Claims Fail With Their Substantive Claims ..... 24

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

DEFENDANT USF REDDAWAY INC.'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERT; AND OPP TO PLAINTIFFS' SUPP MOTION FOR CLASS CERT  CASE NO. 2:16-CV-05572-JAK (FFM)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McDermott Will & Emery
Attorneys At Law
Menlo Park

**IV.    PLAINTIFFS' BELATED THIRD REST BREAK CLAIM SHOULD NOT BE CONSIDERED AND SHOULD OTHERWISE BE DENIED 24**

    A.    There Is No "New Evidence" Justifying Plaintiffs' Delay ..................25

    B.    Plaintiffs Failed To Give Reddaway Fair Notice ................................25

    C.    Plaintiffs Expressly Abandoned Their Rest Break Claim ...................26

    D.    Plaintiffs Fail To Argue Or Establish Excusable Neglect ..................27

    E.    Plaintiffs Have Not Established Any Rest Break Violations ..............28

**V.    CONCLUSION ...........................................................................................30**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahanchian v. Xenon Pictures, Inc.*,
624 F.3d 1253 (9th Cir. 2010) ........................................................................ 27

*Alfred v. Pepperidge Farm, Inc.*,
322 F.R.D. 519 (C.D. Cal. 2017), *modified*, 2017 WL 5665019
(C.D. Cal. July 13, 2017) ................................................................................ 29

*Astiana v. Ben & Jerry's Homemade, Inc.*,
No. C10-4387 PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ....................... 23

*Bibo v. Fed. Express, Inc.*,
No. C07-2505 TEH, 2009 WL 1068880 (N.D. Cal. Apr. 21, 2009) ......... 25, 26

*Blackwell v. SkyWest Airlines, Inc.*,
245 F.R.D. 453 (S.D. Cal. 2007) ............................................................ 9, 10, 12

*Bradley v. Networkers Int'l, LLC*,
211 Cal. App. 4th 1129 (2012) ....................................................................... 29

*Braun v. Safeco Ins. Co. of Am.*,
No. CV 13-00607 BRO, 2014 WL 9883831 (C.D. Cal. Nov. 7,
2014) ................................................................................................................ 14

*Brazil v. Dole Packaged Foods, LLC*,
No. 12-CV-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30,
2014) ................................................................................................................ 27

*Brinker Rest. Corp. v. Superior Court*,
53 Cal. 4th 1004 (2012) .................................................................................. 16

*Buck v. Cemex Inc.*,
No. 1:13-CV-00701-LJO, 2013 WL 4648579 (E.D. Cal. Aug. 29,
2013) .................................................................................................................. 9

*Burnside v. Kiewit Pac. Corp.*,
491 F.3d 1053 (9th Cir. 2007) .......................................................................... 9

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

*Cholakyan v. Mercedes-Benz, USA, LLC*,
   281 F.R.D. 534 (C.D. Cal. 2012) ....................................................................22

*Coria v. Recology, Inc.*,
   63 F. Supp. 3d 1093 (N.D. Cal. 2014)..............................................................9

*Cornn v. United Parcel Serv., Inc.*,
   No. C03-2001 TEH, 2005 WL 588431 (N.D. Cal. Mar. 14, 2005) .............26, 28

*Cortes v. Mkt. Connect Grp., Inc.*,
   No. 14cv784-LAB (DHB), 2015 WL 5772857 (S.D. Cal. Sept. 30,
   2015) ...............................................................................................................27

*Creely v. HCR ManorCare, Inc.*,
   920 F. Supp. 2d 846 (N.D. Ohio 2013) ...........................................................9

*Cummings v. Starbucks Corp.*,
   No. 12–cv–06345–MWF(FFMx), 2014 WL 1379119 (C.D. Cal.
   Mar. 24, 2014) ...............................................................................................30

*Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
   27 F. Supp. 3d 313 (E.D.N.Y. 2014) ...............................................................9

*Dilts v. Penske Logistics, LLC*
   267 F.R.D. 625, 638 (S.D. Cal. 2010) .............................................................13

*Duran v. U.S. Bank N.A.*,
   59 Cal. 4th 1 (2014) .......................................................................................24

*Flores v. Supervalu, Inc.*,
   509 F. App'x 593 (9th Cir. 2013).............................................................14, 19

*Gen. Tel. Co. of the Nw. v. EEOC*,
   446 U.S. 318 (1980) .......................................................................................21

*Jimenez v. Allstate Ins. Co.*,
   No. LA CV10-08486 JAK, 2012 WL 1366052 (C.D. Cal. Apr. 18,
   2012)...............................................................................................................24

*Jovel v. Boiron, Inc.*,
   No. 11-CV-10803-SVW-SHx, 2014 WL 1027874 (C.D. Cal.
   Feb. 27, 2014).................................................................................................23

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

*Kilbourne v. Coca–Cola Co.*,
No. 14-CV-0984-MMA (BGS), 2015 WL 5117080 (S.D. Cal.
July 29, 2015) ........................................................................ 14, 24

*Kimoto v. McDonald's Corps.*,
No. CV 06-3032 PSG, 2008 WL 4690536 (C.D. Cal. Aug. 19,
2008) .......................................................................... 15, 24, 30

*La Parne v. Monex Deposit Co.*,
No. 08-cv-00302-DOC-MLG, 2009 WL 10669751 (C.D. Cal.
Dec. 22, 2009) ............................................................................ 27

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*,
No. 12-cv-05064-JSC2015 ............................................................ 22

*Mireles v. Paragon Sys., Inc.*,
No. 13CV122 L BGS, 2014 WL 4385453 (S.D. Cal. Sept. 4, 2014) .............. 9

*Mora v. Big Lots Stores, Inc.*,
194 Cal. App. 4th 496 (2011) ....................................................... 18

*Moreyra v. Fresenius Med. Care Holdings, Inc.*,
No. SACV10-00517-JVS, 2012 WL 13014985 (C.D. Cal. Mar. 7,
2012) .................................................................................. 20, 21

*Moses v. Avco Corp.*,
97 F.R.D. 20 (D. Conn. 1982) ....................................................... 22

*Munoz v. InGenesis STGi Partners, LLC*,
No. 14-cv-1547-MMA-BLM, 2015 WL 13559891 (S.D. Cal.
Dec. 23, 2015) ............................................................................ 27

*Nguyen v. Baxter Healthcare Corp.*,
275 F.R.D. 596 (C.D. Cal. 2011) ................................................... 13

*Ordonez v. Radio Shack, Inc.*,
No. CV 10-7060-CAS, 2013 WL 210223 (C.D. Cal. Jan. 17, 2013) ............ 30

*Ornates-Hernandez v. Gonzales*,
504 F. Supp. 2d 825 (C.D. Cal. 2007) ............................................ 17

*Polanco v. Schneider Nat'l Carriers, Inc.*,
No. CV 10-4565-GHK, 2012 WL 10717265 (C.D. Cal. Apr. 25,
2012) ...................................................................................... 17

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

*Purnell v. Sunrise Senior Living Mgmt., Inc.*,
  No. SA CV10–00897 JAK, 2012 WL 1951487 (C.D. Cal. Feb. 27,
  2014) ...................................................................................................... 15, 18

*Pyara v. Sysco Corp.*,
  No. 15-cv-01208-JAM-KJN, 2016 WL 3916339 (E.D. Cal. July 20,
  2016) ............................................................................................................... 9

*Quinlan Macy's Corp. Servs., Inc.*, No. CV 12-00737 ............................................ 22

*Ramirez v. City of Buena Park*,
  560 F.3d 1012 (9th Cir. 2009) ...................................................................... 27

*Ramirez v. United Rentals, Inc.*,
  No. 5:10-CV-04374 EJD, 2013 WL 2646648 (N.D. Cal. June 12,
  2013) ........................................................................................................ 11, 12

*Raphael v. Tesoro Ref. & Mktg. Co.*,
  No. 2:15-CV-02862-ODW .............................................................................. 9

*Robbins v. O'Brien Corp.*,
  No. C-76-734 RHS, 1977 WL 42 (N.D. Cal. Feb. 15, 1977) ........................ 22

*Sarviss v. Gen. Dynamics Info. Tech., Inc.*,
  663 F. Supp. 2d 883 (C.D. Cal. 2009) .......................................................... 27

*Shiferaw v. Sunrise Senior Living Mgmt., Inc.*,
  No. LA CV13-02171, 2014 WL 12585796, at *14 (C.D. Cal.
  June 11, 2016) ............................................................................................... 20

*Silverman v. Smithkline Beecham Corp.*,
  No. CV 06-7272 DSF, 2007 WL 6344674 (C.D. Cal. Oct. 15, 2007) ............ 17

*In re Taco Bell Wage & Hour Actions*,
  No. 07-cv-1314 LJO DLB, 2012 WL 5932833 (E.D. Cal. Nov. 27,
  2012) ............................................................................................................. 29

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .................................................................................. 11

*Vasquez v. First Student, Inc.*,
  No. 2:14-CV-06760-ODW, 2015 WL 1125643 (C.D. Cal. Mar. 12,
  2015) ............................................................................................................. 29

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ....................................................................... 24

*Washington v. Joe's Crab Shack*,
   271 F.R.D. 629 (N.D. Cal. 2010) ................................................. 16

*In re Wells-Fargo Home Mortg. Overtime Pay Litg.*,
   527 F. Supp. 2d 1053 (N.D. Cal. 2007)......................................... 17

*White v. Baptist Mem'l Health Care Corp.*,
   699 F.3d 869 (6th Cir. 2012) .......................................................... 9

*White v. Starbucks Corp.*,
   497 F. Supp. 2d 1080 (N.D. Cal. 2007)......................................... 21

*Wilson v. TE Connectivity Networks, Inc.*
   No. 14-CV-04872-EDL, 2017 WL 1758048, at *11 (N.D. Cal.
   Feb. 9, 2017) ................................................................................ 13

*Zayerz v. Kiewit Infrastructure W.*,
   No. 16-CV-6405-PSG (PJW), 2018 WL 582318 (C.D. Cal. Jan. 18,
   2018) ............................................................................................... 9

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ...................................................... 23

**Statutes**

Cal. Lab. Code § 512(a)..................................................................... 8

Cal. Lab. Code § 512(e)..................................................................... 8

Cal. Lab. Code § 512(f) ................................................................ 8, 22

Cal. Veh. Code § 15278(a)(5) ........................................................... 8

Labor Management Relations Act Section 301, 29 U.S.C. § 185(a) ........................ 9

**Federal Rules of Civil Procedure**

Rule 23............................................................................................ 17, 24

Rule 23(b) ........................................................................................... 15

Rule 23(b)(3)........................................................................................ 23

McDermott Will & Emery
Attorneys At Law
Menlo Park

## I.    INTRODUCTION

Plaintiffs allege that they and other pick-up and delivery drivers were not provided meal breaks and thus shorted wages based on Reddaway's auto-deduct system.  However, Plaintiffs' Motion for Class Certification ("Motion") is premised on inaccurate facts, false assumptions, a mischaracterization of various deposition testimony and boilerplate declarations from only two of 16 terminals—all of which are identical in word choice and have been discredited in deposition.  Moreover, Plaintiffs fail to establish that any of their theories are capable of classwide resolution or resolvable by common proof.  On the other hand, Reddaway submits detailed and individualized declarations from over 100 putative class members and managers from all 16 terminals, which unequivocally show that drivers have been provided with, and take, compliant meal breaks and the auto-deduct feature has been known to drivers and cancelled when needed to ensure they are paid for all time worked.  Finally, highly individualized issues predominate such that Plaintiffs' claims cannot be resolved on a classwide basis.  Accordingly, Plaintiffs' Motion should be denied.

## II.    FACTUAL BACKGROUND[1]

### A.    Defendant USF Reddaway Inc.

Defendant USF Reddaway Inc. ("Reddaway" or the "Company") is a trucking and logistics company that operates 16 separately managed trucking terminals throughout California.  Of these terminals, eight are unionized and eight are not.  Croslin Decl. ¶ 3.  Each terminal employs pick-up and delivery ("P&D") drivers and has a distinct operation that varies due to its unique customer base.

#### 1.    P&D Drivers

P&D drivers are hourly employees who perform freight pickup and delivery

---

[1] Defendant incorporates by reference its Compendium of Evidence in Support of Reddaway's Opposition to Plaintiffs' Motion for Class Certification ("Comp.") filed concurrently herein.

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

MCDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

services for Reddaway's residential and commercial customers.   P&D drivers typically drive within a 100 mile radius of their home terminal and work shifts of less than 10 or 12 hours, depending on the driver and terminal.  Crandall ¶ 41, Exh. 8.   Some P&D drivers have assigned routes and service the same areas and customers each day ("route drivers"); some are "shag drivers" that fill in for the route drivers when needed; others fill in as shuttle drivers and move between Reddaway's terminals but do not interact with customers; still other drivers perform dockworker duties by loading and unloading their own trucks.  Croslin Decl. ¶ 4.

### 2.   Reddaway Maintains Compliant Meal Break Policies

Plaintiffs do not contest that the Company's meal break policies are lawful and provide all P&D drivers with compliant meal breaks.

### (i)   The CBAs Applicable to Union Drivers

Union drivers at the Compton, Oakland, Stockton, Redding, San Jose, Fontana, San Diego and Benicia terminals are subject to the terms and conditions of specific collective bargaining agreements ("CBAs").   There are two CBAs applicable to putative class members during the class period, both of which expressly provide for compliant meal breaks and state in Art. 33 that meal breaks are to occur between the drivers' third and fifth hours of work.  Croslin Decl. ¶¶ 5, 6; Exs. **A** and **B**.  The CBAs at Art. 7.01 also require binding arbitration for any disputes arising under the CBAs.  *Id.* at ¶ 10.

### (ii)   Reddaway's Meal Break Policy

Separately, Reddaway maintains a meal break policy that supplements the CBAs and applies to both union and nonunion drivers.  Montes Depo. 131:7-12, 133:9-17 (Reddaway's meal break policy applies to both union and nonunion drivers).  This policy reinforces the existing language of the CBA for union drivers and provides all drivers with a 30 minute uninterrupted duty free meal break before their fifth hour of work and with a second 30 minute uninterrupted duty-free meal break before their tenth hour of work.  Croslin Decl. ¶ 17.  Company policy further

MCDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

requires drivers to take their meal breaks or notify management that they did not do so. *Id.* ¶¶ 19, 21, 23.  Drivers may also *voluntarily* waive their second meal break in writing if they work more than 10, but less than 12 hours, in one workday.[2]  *Id.* ¶¶ 20, 24, Exs. **F** & **I**; Holland Decl. ¶21, Ex **R;** Comp. ¶¶ 1-3, 5, 10-11.

### 3.      Reddaway's Kronos Time Keeping System

Reddaway requires drivers to "punch" in and out for their shifts using the Kronos timeclock located at their terminal.  Wilke Decl. ¶ 4.  Drivers are then paid based on their punch times, minus their 30 minute unpaid meal breaks.  Croslin 30(b)(6) Depo. 93:7-22, 94:4-21; Whitfield Depo. 13:25-14:16; Wilke Decl. ¶ 4.  However, drivers routinely take their meal break away from the terminal (about 92% of the time) and cannot record them on the Kronos timekeeping system.  Wilke Decl. ¶ 9.  For this reason, Reddaway deducts 30 minutes to account for drivers' unpaid meal breaks, unless the driver notifies management that they did not take their meal break.   When this happens, Reddaway's policy and practice throughout the class period has been to cancel the auto-deduct for untaken meal breaks so that drivers are accurately paid for all time worked.  *Id.* ¶ 8; Comp. ¶¶ 37, 38; Barrios Depo. 191:8-20.  In fact, the auto-deduct has been cancelled, disabled, or reversed on approximately 50,502 occasions during the class period, or for 74% of all putative class members on one or more occasions.  Wilke Decl. ¶ 8.

### (i)      There Is No Uniform Auto-Deduct Setting in Kronos

The default setting (code) applied to each driver in the Kronos timekeeping system varies based on the driver's terminal location, union status and whether the driver voluntarily waived their second meal break when working less than 12 hours. Wilke Decl. ¶¶ 6- 7.  Specifically, drivers at five of eight union terminals (and a majority of all putative class members) are set up with only one 30 minute

---

[2] Plaintiffs' assertion that drivers are "forced" to sign meal break waivers is untrue and contradicted by the evidence.  Croslin 30(b)(6) Depo. 174:19-175:1 (testifying drivers are *not* required to sign meal waivers).

McDermott Will & Emery
Attorneys At Law
Menlo Park

deduction to occur after working 6 hours. The remaining three union and all eight nonunion terminals each have auto-deduct differences within their terminals. *Id.* Specifically, some drivers at these terminals are subject to only one auto-deduct; whereas others are subject to a second auto-deduct when they work over 10 hours; and yet others are subject to a second auto-deduct only when they work over 12 hours. *Id.* Thus, Plaintiffs' blanket assertion that "Defendant automatically deducted 30 minutes of work time for shifts over six hours and 60 minutes for shifts over ten hours for all Drivers" (Motion 2:21-23) is inaccurate. Whitfield Depo. 18:21-19:1 (majority of drivers are *not* set up with a second auto-deduct).

### (ii) Reddaway Has Multiple Processes In Place To Ensure Drivers Are Paid For All Time Worked

Reddaway has established various processes to ensure that drivers are not shorted any wages as a result of its payroll system. First, each terminal has Time Adjustment Forms ("TAF") located either near the timeclock or in the dispatch office. Comp. ¶¶ 35, 36. The TAFs are used by drivers to notify local management or local payroll (depending on the practice of the terminal) about untaken meal breaks, so that the auto-deduct is cancelled for those meal breaks. Whitfield Depo. 89:3-21, 13:18-24, 14:17-15:7; Croslin Decl. ¶¶ 19, 23. Drivers know about the auto-deduct, and the TAF process for cancelling it, because it is communicated to them in writing via Reddaway's written meal break policy.[3] *Id.*; Barrios Depo. 139:13-23, 209:2-24, 210:14-18; Comp. ¶¶ 34-36. The auto-deduct and its cancellation process are also explained to drivers verbally by local management or payroll personnel at the weekly drivers meetings. Comp. ¶ 33. Likewise, local personnel are trained on the cancellation process to ensure it is utilized so that drivers are paid for all time worked. Croslin 30(b)(6) Depo. 154:16-155:3.

---

[3] Numerous drivers—including Plaintiffs' declarants—attest to knowing about the TAFs but never needing to submit one for meal breaks because they always take their meal breaks. Comp. ¶ 39.

1    Once local management or payroll receives the TAF for an untaken meal

2    break, they can cancel the auto-deduct one of two ways.  First, they can "cancel"

3    the auto-deduct within the Kronos system using the Kronos' cancellation feature.

4    This in effect turns off the auto-deduct and stops it from occurring.    The

5    cancellation is notated by a "Y" in the notes column on the drivers' Kronos time

6    records.  Wilke Decl. ¶¶ 8-10.  Second, local payroll or terminal management can

7    "reverse" the auto-deduct by manually adding 30 minutes into the driver's Kronos

8    to account for an untaken meal break.    Whitfield Depo. 14:17-15:7 (terminals

9    managers can edit employee time); Lines Decl. ¶ 11 (would manually add 30

10   minutes to drivers' time in Kronos system to account for untaken meal breaks);

11   Velez Decl. ¶ 14 (same).  The manual adjustment effectively negates the auto-

12   deduct and thus ensures the drivers are paid for all hours worked, including proper

13   overtime compensation.  Wilke Decl. ¶ 10, n.1.  The manual adjustment is notated

14   by a "1" in the notes column of the drivers Kronos' records.  Although Plaintiffs

15   claim that managers were "incentivized to turn a blind eye" to the auto-deduct

16   (Motion 4:3-6), this is untrue, as evidenced by the testimony from terminal

17   management.  Comp. ¶¶ 37-39.  This is also unequivocally refuted by the evidence,

18   which shows that the auto-deduct has been cancelled or reversed within the Kronos

19   system on over 4,463 occasions throughout the class period, or for 10% of putative

20   class members on one or more occasions.[4]  Wilke Decl. ¶ 10; Comp. ¶¶ 37, 38.

21   Lastly, if a driver punches out for their meal break at the terminal, the Kronos

22

23   [4]  The number of auto-deduct cancellations or reversals (4,463) amounts to
     approximately 1% of shifts worked by putative class members during the class

24   period.  Wilke Decl. ¶ 10.  This is consistent with (a) Reddaway's meal break
     policy, which requires drivers to take their meal breaks; and (b) driver and manager

25   declarations from all 16 terminals, which show drivers take their meal breaks daily,

26   obviating the need for a high percentage of auto-deduct cancellations.  Moreover,
     Plaintiffs have not presented any evidence that Reddaway has failed to cancel the

27   auto-deduct when a driver reports not taking a meal break, whereas the evidence

28   shows that Reddaway has cancelled the auto-deduct thousands of times.

MCDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

system mechanically disables the auto-deduct and instead records the driver's actual meal break time. Wilke Decl. ¶ 9. This disablement is notated as an "M" in the notes column of the drivers' Kronos records. As evidenced by the M's in his time records, Plaintiff Montes has personally disabled the automatic 30 minute deductions for his meal breaks on over 90 occasions (or approximately 15% of his total shifts worked throughout the class period, dating back to 2015). *Id.* Additionally, 64% of putative class members have punched out for their meal breaks at the terminal on one or more occasions and thus disabled their auto-deduct on 46,045 occasions (or during 8% of all shifts worked by putative class members) throughout the class period. *Id.*

### (iii) Reddaway Utilizes An Additional Safeguard To Ensure Drivers Are Paid For All Time Worked

As an added safeguard to ensure drivers are paid for all time worked, drivers are to review their Kronos time records for accuracy each week.[5] Comp. ¶ 40. The Kronos records indicate with an "A" whether an auto-deduct occurred. Thus, if there are any issues with drivers' time records, they are to notify local payroll, who will promptly correct the error before payroll is processed. Comp. ¶ 41.

### 4. The Handheld Device Is Unreliable

Throughout the class period, P&D drivers have been provided with various versions of a handheld device to log their stops, communicate with dispatch about customer appointments and record their meal breaks when they are away from the terminal. Croslin 30(b)(6) Depo. 19:4-25, 31:23-32:11. The handheld device generates a report called a MDT record. However, drivers are not paid off of their MDT records. *Id.* 93:7-22; 94:4-21 (drivers are paid solely based on their Kronos start and end times, minus their unpaid meal breaks); Whitfield Depo. 13:25-14:16.

---

[5] This practice varies by terminal. For example, San Jose, Stockton, Compton and Oakland (among other terminals) provide Kronos records directly to drivers for review; San Diego requires drivers to expressly authorize their records are accurate; other terminals provide them to drivers upon request. Comp. ¶ 40.

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

McDermott Will & Emery
Attorneys At Law
Menlo Park

This is because the MDT records are not payroll records or meal break records for purposes of the auto-deduct, nor were they intended to be.  Wilke Decl. ¶ 12. Instead, the devices have been a pilot program for Reddaway to explore practical ways for drivers to record meal breaks while away from the terminal.  *Id.*

Unfortunately, the handheld devices (and their corresponding MDT records) have been unreliable for numerous reasons, including: (1) drivers experiencing technical issues with their devices; (2) drivers experiencing service issues near the Mexican border or at customer locations in the hills which render their devices inoperable; (3) the battery dying before the driver could record their stops or meal breaks on their devices; (4) drivers being dispatched without a device because there were not enough devices for all drivers on a particular day; and/or (5) the driver simply choosing not to affirmatively record their meal breaks on their handheld device because they knew about the auto-deduct for their meal breaks.  Comp. ¶¶ 28-31; Holland Decl. ¶ 20, Ex **Q**.  In fact, scores of drivers attest to taking compliant meal breaks daily but not accurately recording them on their handheld devices for these reasons.  Comp. ¶¶ 28-31.

Similarly, Plaintiff Montes testified that his handheld device "was always failing," "was not a trusted device," and the "batteries [would] go out."  Montes Depo. 262:5-12, 264:1-4.  He also testified he had problems with his device "80 percent of the time," and that he and other Fontana P&D drivers would change out the devices "at least twice a day" because they were not working properly.  *Id.* at 265:13-25; 267:6-18, 268:1-18.  Consistent with the MDT records' unreliability, on March 18, 2016, Montes filed a grievance with his union regarding meal breaks (detailed further below), in which he sought penalty pay for noncompliant meal breaks on ten (10) occasions.  Croslin Decl. ¶¶ 12-16.  By specifying the violations occurred on only ten occasions during the class period, Montes conceded that all other meal breaks were lawfully provided to him.  However, Montes' MDT records for this time period do not show compliant meal breaks recorded each day during

February 2016, which demonstrates Montes was taking compliant meal breaks but not accurately recording them on his handheld device. *Id.* 199:12-200:2 (admitting he did not necessarily record meal breaks unless he took them at the terminal).

Because the handheld devices and their records are unreliable evidence of whether, when and for how long meal breaks were taken, Reddaway has not utilized the MDT records for purposes of payroll or canceling the auto-deduct. Instead, per Company policy, drivers are expected to take compliant meal breaks and/or report not doing so to local management via TAFs so that the auto-deduct can be disabled for those meal breaks. Croslin Decl. ¶¶ 19, 21, 23. This process has been in place throughout the class period to ensure that drivers are paid for all of their time worked, and the number of auto-deduct cancellations shows that Reddaway's timekeeping process works effectively. Wilke Decl. ¶¶ 8-10.

## III.   LEGAL ARGUMENT

### A.   All Union Putative Class Members' Meal Break Claims Are Barred By Cal. Lab. Code § 512(e) And (f)

Plaintiffs cannot certify a class of union putative class members on their meal break claims because all union P&D drivers are exempt from the meal break requirements in Cal. Lab. Code § 512(a), per the exemption provided in Cal. Lab. Code §§ 512(e) and (f). Specifically, the applicable CBAs meet the exemption requirements because each expressly provides for wages (*see* CBAs *generally* & Arts. 10 & 34), hours of work (*see* CBAs *generally* & Art. 4), working conditions (Art. 33), meal periods (Art. 33), final and binding arbitration procedures (Arts. 6-7), premium wage rates for overtime (Art. 33), and an hourly pay rate that is greater than 30 percent of the California minimum (Art. 34). Croslin Decl. ¶¶ 5, 6; Cal. Veh. Code § 15278(a)(5); Montes Depo 157:14-19 (Plaintiff transports hazardous materials "very often"). Accordingly, Plaintiff Montes and union drivers have no

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

McDermott Will & Emery
Attorneys At Law
Menlo Park

viable meal break claims against the Company in this action.[6]  *See, e.g.*, *Pyara v. Sysco Corp.*, No. 15-cv-01208-JAM-KJN, 2016 WL 3916339, at *4 (E.D. Cal. July 20, 2016) (granting judgment on the pleadings as to meal break claims pursuant to § 512(e)); *Zayerz v. Kiewit Infrastructure W.*, No. 16-CV-6405-PSG (PJW), 2018 WL 582318, at *4 (C.D. Cal. Jan. 18, 2018) (granting summary judgment on meal period claim because § 512(e) exemption was satisfied); *Mireles v. Paragon Sys., Inc.*, No. 13CV122 L BGS, 2014 WL 4385453, at *5 (S.D. Cal. Sept. 4, 2014).

### B.    Individualized Issues Predominate The Auto-Deduct Claim

Auto-deduct policies are not per se unlawful.[7]  *See, e.g.*, *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 467 (S.D. Cal. 2007).  Here, Reddaway's auto-deduct policy is lawful because it regularly cancels auto-deducts to account for untaken meal breaks so that drivers are accurately paid for all time worked.  Thus,

---

[6] If the elements of § 512(e) are satisfied, then Plaintiffs' meal break claim is preempted because it would "arise" under the CBA.  *See, e.g.*, *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093 (N.D. Cal. 2014) (state meal period claim preempted where § 512(e) applied).  On the other hand, any dispute as to whether § 512(e) applies triggers preemption and dismissal of the alleged claims under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) because resolving such a dispute would "substantially depend" on interpretation of the CBAs.  *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007); *see, e.g.*, *Raphael v. Tesoro Ref. & Mktg. Co.*, No. 2:15-CV-02862-ODW EX, 2015 WL 3970293, at *7 (C.D. Cal. June 30, 2015); *Buck v. Cemex Inc.*, No. 1:13-CV-00701-LJO, 2013 WL 4648579 at *7 (E.D. Cal. Aug. 29, 2013).

[7] California federal and state appellate courts join the many jurisdictions that have held lawful auto-deduct policies, without more, are not sufficient to justify class certification.  *See, e.g.*, *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) (granting employer summary judgment on auto-deduct claim because auto-deduct policy did not violate FLSA); *Creely v. HCR ManorCare, Inc.*, 920 F. Supp. 2d 846, 854 (N.D. Ohio 2013) (denying certification under FLSA because application of lawful auto-deduct policy varied between managers and facilities); *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313 (E.D.N.Y. 2014) (decertifying auto-deduct class because "[w]ithout more, a legal automatic meal deduction for previously scheduled breaks cannot serve as the common bond around which an FLSA collective action may be formed").

to support certification, Plaintiffs must establish a common unlawful practice that resulted in the underpayment of wages. *Id.* Plaintiffs have not, and cannot, make this showing.

### 1.   Plaintiffs Mischaracterize Reddaway's Timekeeping System

Plaintiffs argue that common questions of fact and law exist because Reddaway "automatically deducts meal period(s) from each day's paid time *regardless* of whether a meal period was taken" and that "the automatically deducted meal periods *cannot* be overridden by the Drivers." Motion 15:27-16:1, 4:28-5:1 (emphasis added). However, Reddaway's auto-deduct does not deduct regardless of whether a meal period is taken but instead is a lawful payroll method for ensuring accurate pay minus taken meal periods. Moreover, the evidence shows here that Reddaway's auto-deduct feature has been cancelled, reversed, or disabled on approximately 50,502 occasions during the class period, or for 74% of putative class members. Wilke Decl. ¶ 8; Comp. ¶¶ 37, 38. Moreover, the evidence shows that drivers have been aware of and regularly initiate the cancelation process by submitting TAFs for untaken meal breaks, or by notifying management verbally, depending on the practice of the terminal. Barrios Depo. 210:14-18 (testifying that he was aware that the auto-deduct feature could be cancelled); Comp. ¶¶ 37-39. Accordingly, Plaintiffs' theory that drivers are systematically shorted wages as a result of Reddaway's payroll system is directly refuted by the evidence.

### 2.   There Is No Common Practice Amongst The Terminals In Managing The Auto-Deduct Feature and its Cancellation

Although the auto-deduct feature has been cancelled on countless occasions, there is no uniform practice amongst the terminals regarding the cancellation of the auto-deduct feature to ensure drivers are paid for all time worked. This is because (1) some terminals turn off the auto-deduct in the Kronos system by using the precise cancelation feature; (2) some terminals reverse it by manually adding 30 minutes into the employee's time worked in the Kronos system; (3) some drivers

DEFENDANT USF REDDAWAY INC.'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERT; AND OPP TO PLAINTIFFS' SUPP MOTION FOR CLASS CERT  CASE NO. 2:16-CV-05572-JAK (FFM)

McDermott Will & Emery
Attorneys At Law
Menlo Park

punch out for their meal breaks at the terminal and thus mechanically disable the auto-deduct; and (4) the majority of drivers always take full 30 minute meal breaks so that they would not be shorted wages by an automatic meal break deduction. Wilke Decl. ¶¶ 8-10; Comp. ¶¶ 37-39.  In sum, there is simply no uniform method of addressing the auto-deduct feature across the various terminals.   In similar circumstances where the auto-deduct practice varied across locations, class certification was denied on both commonality and predominance grounds.  *See, e.g.*, *Ramirez v. United Rentals, Inc.*, No. 5:10-CV-04374 EJD, 2013 WL 2646648, *5–6 (N.D. Cal. June 12, 2013) (denying certification of auto-deduct policy class where "not all branch managers automatically deducted time for meal breaks" and thus "proof will vary from branch to branch, and from driver to driver").  Here, not only do the practices vary by terminal, but the number of auto-deduct cancellations are substantial and a critical part of the timekeeping process.  Wilke Decl. ¶¶ 6-10.

### 3.  Plaintiffs Fail To Proffer Any Reliable Evidence Capable of Resolving Their Auto-Deduct Claim On A Classwide Basis

Where a putative class member needs to introduce individualized proof to establish elements of his claims, the predominance test is not met.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  Here, Plaintiffs fail to proffer any reliable evidence capable of resolving Plaintiffs' auto-deduct claim on a classwide basis.  Instead, Plaintiffs rely solely on the existence of the lawful auto-deduct feature, and on a sample of the MDT records—which Plaintiff Montes and the putative class admit are unreliable.  Comp. ¶¶ 28-31.  Moreover, Reddaway has a comprehensive timekeeping process in place to ensure drivers are paid for all time worked—including the TAF process and having drivers review their time records for accuracy before payroll is processed.  Comp. ¶ 40.  Drivers are aware of and have used this process to cancel the auto-deduct feature over 4,463 times throughout the class period.  Wilke Decl. ¶¶ 10; Comp. ¶¶ 37-39.  Indeed, drivers and managers from all 16 terminals have testified that it is common knowledge that

McDermott Will & Emery
Attorneys At Law
Menlo Park

drivers are required to take their meal breaks or report not doing so in order to disable the auto-deduct feature.  Comp. ¶¶ 32-36.  Thus, it is clear that Reddaway's timekeeping system has not shorted drivers wages based on the auto-deduct feature.

To the extent the system has slighted a particular driver on a particular occasion, individualized testimony will be needed from that driver to determine (1) which meal breaks, if any, were actually not taken; (2) whether the driver reported those untaken meal breaks to local management, as required; (3) whether those untaken meal breaks were subject to the auto-deduct feature (since not all meal breaks are subject to an auto-deduct); (4) whether and how the terminal manager addressed the auto-deduct feature for those untaken meal breaks (since the various terminals addressed the auto-deduct feature differently); and (5) whether the manager's method for addressing the auto-deduct resulted in an underpayment of wages to the driver.  None of this, however, can be discerned from looking at the MDT reports as Plaintiffs assert.  Comp. ¶¶ 28-31; Wilke Decl. ¶¶ 7, 10.

In similar cases, where there was no reliable classwide evidence of an auto-deduct violation, courts have routinely denied certification of the auto-deduct claim, as the Court should do so here.  *See, e.g.*, *Blackwell*, 245 F.R.D. at 467 (denying certification of meal break class based on auto-deduct policy on predominance grounds where there was no common evidence capable of classwide resolution because "many stations did not require employees to clock in-and-out for meal periods . . . and there [were] incomplete records to determine whether meal periods were taken, and, if so, for how long"); *Ramirez,* 2013 WL 2646648, *5–6.

### 4.    The Auto-Deduct Cases Plaintiffs Rely On Are Inapposite

Plaintiffs fail to cite (and Defendant is unaware of) any case certifying an auto-deduct claim where, like here, the auto-deduct feature has been cancelled on thousands of occasions via three different available methods, and where the company has multiple safeguards in place to ensure employees are paid for all time worked.  Instead, Plaintiffs rely on three inapposite cases to justify certification,

- 12 -

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

1   each of which is axiomatically different than the case at hand.

2      First, Plaintiffs falsely state that *Nguyen v. Baxter Healthcare Corp.*, 275

3   F.R.D. 596 (C.D. Cal. 2011), certified an auto-deduct class, which is untrue.

4   Although the company in *Nguyen* utilized timekeeping software that automatically

5   deducted 30 minutes for workers' meal breaks, the court certified a standard meal

6   break class, not an auto-deduct/minimum wage class, because management had

7   unlawfully instructed drivers to take their meal breaks late. *Id.* at 600–01. In fact,

8   the meal break claim there is different because *Nguyen* involved production-line

9   workers at a single facility, all of whom were required to take late meal breaks at

10  the exact same time, at the direction of their supervisor. *Id.* at 600.

11     Next, in *Wilson v. TE Connectivity Networks, Inc*., the court certified an auto-

12  deduct class because the employees there were never trained to notify managers of

13  missed breaks; there was no mechanism for employees to notify management about

14  missed meal breaks so that the auto-deduct could be cancelled; and there was *no*

15  *evidence* that the auto-deduct had been cancelled. No. 14-CV-04872-EDL, 2017

16  WL 1758048, at *11 (N.D. Cal. Feb. 9, 2017). Finally, in *Dilts v. Penske Logistics,*

17  *LLC*, the court certified an auto-deduct class where the employer had no means to

18  cancel the auto-deduct feature whenever an employee did not take a meal break

19  (and, like in *Wilson*, offered no evidence of auto-deduct cancellations). 267 F.R.D.

20  625, 638 (S.D. Cal. 2010). Both *Wilson* and *Dilts* are in stark contrast to the

21  situation here because (1) Reddaway has produced evidence of a comprehensive

22  approach to canceling the auto-deduct where a driver informs the Company they

23  did not get their meal period (Comp. ¶¶ 34-36); (2) its auto-deduct feature is

24  mechanically disabled whenever a driver punches out for their meal break using the

25  Kronos timeclock (Wilke Decl. ¶ 9); (3) its meal break policy expressly requires

26  drivers to notify management of untaken meal breaks via TAFs so that the auto-

27  deduct can be disabled for that occasion (Croslin Decl. ¶¶ 19, 23); (4) drivers know

28  about the auto-deduct and ability to cancel it by submitting a TAF (Comp. ¶¶ 32-

34); (5) drivers have in fact submitted TAFs for untaken meal breaks on countless occasions throughout the class period (Comp. ¶¶ 37, 38); and (6) Reddaway has cancelled the auto-deductions on those occasions. *Id.*; Wilke Decl. ¶¶ 6-10.  Thus, Plaintiffs' assertion that "there is no effective way for drivers to cancel the auto-deduction" (Motion 3:10-18) is false and directly refuted by the evidence.

## C.   Individualized Inquiries Predominate The Meal Break Claim

Plaintiffs do not challenge Reddaway's meal period policies as facially unlawful but instead Plaintiffs attempt to establish, as they must, a common unlawful "practice" to support certification of their failure to provide meal breaks claim.  *See Flores v. Supervalu, Inc.*, 509 F. App'x 593, 593 (9th Cir. 2013) (affirming denial of class certification because employer maintained facially lawful policy and plaintiff failed to establish a uniform disregard thereof).[8]  In a failed attempt to make this showing, Plaintiffs allege that workloads and managerial pressures prevented drivers from taking meal breaks.  Motion 16:3-4.  Plaintiffs further allege that classwide meal break "liability and damages can be established through Defendant's [MDT] records" since such records "show whether meal breaks were taken."  Motion 24:1-5.  Plaintiffs' arguments are unsound.

### 1.   Drivers Were Taking But Not Recording Meal Breaks

Plaintiffs exclusively rely on the MDT records (generated from the handheld devices) to argue that meal break violations occurred on a classwide basis.  Specifically, Plaintiffs argue that any unrecorded meal break proves a meal break violation occurred.  However, as explained above, the MDT records do not

---

[8] *See also Braun v. Safeco Ins. Co. of Am.*, No. CV 13-00607 BRO (PLAx), 2014 WL 9883831, at *14 (C.D. Cal. Nov. 7, 2014) (denying certification where plaintiffs failed to produce substantial evidence of a companywide policy to violate the company's facially lawful policy); *Kilbourne v. Coca–Cola Co.*, No. 14-CV-0984-MMA (BGS), 2015 WL 5117080, at *11 (S.D. Cal. July 29, 2015) (denying certification because individualized issues predominated where the evidence failed to point to a uniform, unlawful companywide practice).

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

1    accurately reflect the putative class's meal break practices because the drivers,

2    including Plaintiff Montes, were taking compliant meal breaks but not recording

3    them on their handheld devices.  Comp. ¶¶ 28-31; Montes Depo. 199:12-200:2; *see*

4    *supra* section I.A.4.   Additionally, the MDT records are not used for payroll

5    purposes or to determine if an employee took their meal breaks; nor are they used to

6    cancel the auto-deduct.  Wilke Decl. ¶ 12.  Thus, the sole records Plaintiffs rely on

7    to establish their meal breaks claims cannot reliably prove or disprove meal break

8    violations on a classwide basis since these records do not accurately show whether,

9    when, and for how long meal breaks were provided to or taken by the drivers.

10        In similar circumstances, where there are unreliable meal break records and

11   thus no common proof capable of determining meal break liability on a classwide

12   basis, courts have denied certification on Rule 23(b) grounds for lack of classwide

13   evidence.  *See, e.g.*, *Kimoto v. McDonald's Corps.*, No. CV 06-3032 PSG (FMOx),

14   2008 WL 4690536, at *6 (C.D. Cal. Aug. 19, 2008) (denying certification of meal

15   break claim due to unreliable meal break records, since "[some] employees clocked

16   out for their full 30 minute meal periods . . . most of the time, and some appear to

17   have clocked out only part of the time"); *Purnell v. Sunrise Senior Living Mgmt.,*

18   *Inc.*, No. SA CV10–00897 JAK (MLGx), 2012 WL 1951487, at *5 (C.D. Cal. Feb.

19   27, 2014) (denying certification of meal break claim because time records were

20   unreliable indicators of whether meal break violations occurred).  Almost identical

21   to Plaintiffs' argument here, the *Purnell* plaintiff contended that time records could

22   establish when employees took and missed meal breaks, and "a statistical analysis

23   of these time records will ensure that common questions of fact will predominate

24   over individual questions of whether missed breaks varied by job location and

25   classification." *Id.* However, the Court rejected this argument because the "Plaintiff

26   has not shown that time records can establish whether employees took meal breaks,

27   because many employees do not punch out for meal breaks and others punched at

28   incorrect times," which is precisely the case here.  *Id*.  In fact, Plaintiffs' expert

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

McDermott Will & Emery
Attorneys At Law
Menlo Park

1 does not even try to make this showing and concedes that the MDT records do not

2 reflect whether meal breaks were provided or taken by the drivers.   Chasworth

3 Depo. 87:7-12, 98:4-7, 98:15-22, 204:25-205:9; Crandall Decl. ¶¶ 22-23.

4 **2.  Plaintiffs Mischaracterize the Law Regarding Meal Breaks**

5 Even assuming the MDT records in this case were reliable, Plaintiffs

6 erroneously presume that any unrecorded meal break is a meal break violation.

7 Motion 23:28-24:1.  This is not the law.  Employers are required to provide meal

8 breaks but not ensure they were actually taken.  *Brinker Rest. Corp. v. Superior*

9 *Court*, 53 Cal. 4th 1004, 1040–41 (2012).  Driver time records are therefore not

10 dispositive of Plaintiffs' meal break claim because such records only reveal whether

11 a meal break was in fact recorded on a particular day.  They do not establish

12 whether the meal break was sufficiently provided, or even taken, at a particular

13 time.  As a result, individualized inquiries are necessary for each driver on each day

14 at each terminal during the class period to confirm whether meal breaks were

15 provided or actually taken but not recorded, and whether untaken meal breaks were

16 voluntarily waived, all of which cannot be discerned from simply reviewing the

17 MDT records.  For this reason, courts routinely deny certification of similar meal

18 break claims premised solely on meal break records, as the Court should do here.

19 *See, e.g.*, *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 641–42 (N.D. Cal.

20 2010) (denying certification of meal break claim because individualizes inquiries

21 beyond review of the meal break records are necessary to determine whether a meal

22 break was actually taken or sufficiently "provided").

23 **3.  Plaintiffs Have Not Established An Unlawful Practice**

24 In addition to the unreliable MDT records, Plaintiffs rely on 83 identical, pre-

25 printed boilerplate driver declarations from only two terminals, Fontana and

26 Compton (both union), to argue that putative class members were not provided with

27 compliant meal breaks due to their assigned workloads and pressures to complete

28 their customer appointments.  Holland Decl. ¶ 19.  However, such isolated, cookie-

cutter declarations from less than 8% of the putative class out of only 2 of 16 terminals are insufficient to support certification on a classwide basis. *See, e.g.*, *Polanco v. Schneider Nat'l Carriers, Inc.*, No. CV 10-4565-GHK (JEMx), 2012 WL 10717265, at *14 (C.D. Cal. Apr. 25, 2012) ("boilerplate or 'cookie-cutter' declarations" insufficient for "rigorous analysis" required by Rule 23).[9]

Additionally, contrary to their declarations, many of Plaintiffs' declarants admitted during deposition[10] that: (1) they did not actually read or understand their statement before signing it; (2) the statement did not apply to their meal break experiences at Reddaway; (3) they take their meal breaks every day; (4) they cannot recall a single occasion on which they did not take their meal breaks; (5) they have never been instructed to miss meal breaks but have been expressly instructed *to* take meal breaks regardless of potential customer issues; (6) they have flexibility to take meal breaks because their pick-ups and deliveries are to occur during large customer windows; and (7) they were not always recording their meal breaks on their handheld devices even though they were taking them.  Comp. ¶¶ 28-31; Soria Depo. 65:19-6:3 (expressly recanting his entire declaration, testifying that none of the statements applied to him and he signed the declaration not realizing they pertained to meal breaks); Parro Depo. 52:2-23, 177: 2-5 (testifying he did not agree with the contents of his declaration and that his workload did not prevent him from taking meal breaks); see also Objections to Plaintiffs' Compendium of Putative Class Member Declarations filed concurrently herein.

---

[9] *See also In re Wells-Fargo Home Mortg. Overtime Pay Litg.*, 527 F. Supp. 2d 1053, 1060 (N.D. Cal. 2007) (declarations had "glaring reliability concerns" because they were "nearly identical in terms of language and substance"); *Ornates-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 848 (C.D. Cal. 2007) (criticizing identical declarations); *Silverman v. Smithkline Beecham Corp.*, No. CV 06-7272 DSF (CTx), 2007 WL 6344674, at *6 n. 5 (C.D. Cal. Oct. 15, 2007) (strongly disapproving boilerplate attorney-drafted declarations).

[10] Plaintiffs only permitted Reddaway to depose 10 of Plaintiffs' 83 declarants. Holland Decl. ¶ 19.

McDermott Will & Emery
ATTORNEYS AT LAW
MENLO PARK

McDermott Will & Emery
Attorneys At Law
Menlo Park

Most notable, however, is that Plaintiffs present no evidence of meal break violations from a majority of the terminals, including any nonunion terminals. Reddaway, on the other hand, submits evidence from drivers at 14 of the 16 terminals (including Fontana and San Fernando Valley, where Plaintiff Montes and Barrios worked), who attest to not feeling pressured to work through meal breaks. Comp. ¶13.  This is because most customer appointments can occur within large time windows, such as anytime between 8am and 4pm or 9am and 5pm, depending on the terminal and specific customer.  Comp. ¶ 14.  If there is a scheduling issue that interferes with a driver's ability to take a timely meal break, the driver is required to notify dispatch or local management, who will simply reschedule or reassign the appointment.  Comp. ¶ 17.  Additionally, many drivers confirm that Reddaway has expressly instructed them to take their meal breaks, even if it means missing a customer appointment or returning freight to the terminal.[11]  Comp. ¶ 22.

Based on the detailed and individualized evidence submitted by Reddaway, and the lack of reliable evidence submitted by Plaintiffs, it is clear that Plaintiffs have not established a common unlawful practice that drivers from the various terminals have experienced the workload or managerial pressures of which Plaintiffs complain.  *See Mora v. Big Lots Stores, Inc.*, 194 Cal. App. 4th 496, 508–09 (2011) (defendant's detailed declarations weighted more heavily than plaintiffs' "identical and undetailed declarations").

### 4.    Plaintiffs' Claim Cannot Be Resolved On A Classwide Basis

Reddaway has presented substantial evidence[12]—including over 100 driver

---

[11]  Contrary to Plaintiffs' assertion, drivers are not reprimanded for missing or rescheduling customer appointments, rearranging their routes or returning freight to the terminal.  Comp. ¶¶ 18-21.  Plaintiffs also present no evidence that Reddaway prevents drivers from changing their routes or requiring meal breaks at specific locations or distances from the terminal.  Instead, the evidence shows drivers can choose where and when to take their meal breaks.  Comp. ¶¶ 8-9, 13.

[12]  *See Purnell*, 2012 WL 1951487, at *4 (recognizing employer's detailed declarations as "substantial evidence").

declarations, and manager declarations from all 16 terminals—which show drivers are not only provided with, but take, compliant meal breaks daily.  Comp. ¶¶ 2, 9. To the extent a driver has not taken a meal break on a particular day, such meal break claims cannot be resolved on a classwide basis.  This is because the meal break experience of each driver varies based on a conflux of personalized factors that can influence whether or when meal breaks are taken, but have nothing do with an overarching, uniform Company policy of not providing them.  *See Flores,* 509 F. App'x at 593 (affirming denial of certification on predominance grounds where resolution of meal break claim requires examination of "a number of human factors and individual idiosyncrasies" having "little to do with an overarching policy").

Specifically, here, the factors that can influence whether and when meal breaks are taken include: (1) the driver's route (which can vary daily); (2) the driver's workload (which can vary from terminal to terminal, as some terminals are busier than others); (3) the specific customers the driver is servicing (as each terminal has a unique customer base, and each customer may have its own scheduling requirements, windows, and preferences); and (4) the driver's personal preference as to whether or when they take meal breaks.  For example, many drivers attest to wanting to take their meal breaks past their fifth hour, despite being able and instructed to take it earlier, because they are not hungry at their fifth hour. Others attest to sometimes voluntarily waiving their meal breaks, despite not having a signed meal break waiver on file, because they did not feel like taking them.  Still others attest to voluntarily waiving their second meal breaks because they "would rather go home."  Comp. ¶¶ 11, 27.

In addition, drivers may have different meal break practices depending on the type of P&D driver they are.  For example, "route drivers" have assigned routes and generally service the same areas and customers each day, which means they take their meal breaks more regularly at the same time or location.  Comp. ¶ 24.  Other "shag drivers" fill in for certain route drivers when needed, and thus whether, when,

McDermott Will & Emery
Attorneys At Law
Menlo Park

- 19 -

and where they take meal breaks will vary depending on the day, customer, and location, since every day is different.  Croslin Decl. ¶ 4.  Others, such as Plaintiff Barrios, fill in as shuttle drivers by performing services between the terminals but do not interact with customers or perform dockworker duties by loading or unloading their own trucks at the terminal.  Croslin Decl. ¶ 4; Barrios Depo. 102:24-103:15.  These drivers could therefore take their meal breaks at the terminals, which would additionally not be reflected in their MDT records.  Wilke Decl. ¶ 12.  As a result of these unique experiences, Plaintiffs' meal break claim is not appropriate for class treatment because there is no credible evidence that meal periods were not lawfully "provided" by Reddaway.  Moreover, any such inquiry requires "numerous individualized inquiries into the staffing at each [terminal], how meal periods were scheduled, and why meal periods were missed." *Shiferaw v. Sunrise Senior Living Mgmt., Inc*., No. LA CV13-02171 JAK (PLAx), 2014 WL 12585796, at *14 (C.D. Cal. June 11, 2016) (denying certification of meal break class because the defendant presented evidence showing a "wide variation in meal breaks taken depending on job classifications, departments, and . . . locations").

### D. <u>Individualized Issues Predominate The Meal Premium Claim</u>

Plaintiffs fail to show, by common methods of proof, that Reddaway's conduct or policies "forced [employees] to forego" their meal period on a classwide basis, which is required to support certification of a meal period premium claim. *See, e.g.*, *Moreyra v. Fresenius Med. Care Holdings, Inc.,* No. SACV10-00517-JVS (RZx), 2012 WL 13014985, at *13 (C.D. Cal. Mar. 7, 2012) (denying certification of meal premium subclass based on an auto-deduct theory where the employer's Kronos time records could "not reveal why meal periods were missed, cut short, or taken late", which was "essential" in determining meal premium liability).

Specifically, here, Plaintiffs fail to establish drivers are forced to forego their meal breaks on a classwide basis entitling them to meal break premiums.  To the contrary, as stated above, Plaintiffs' declarations are flawed and not representative

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

of the drivers across all of the terminals, and the MDT records are unreliable indicators of driver meal break practices. *See supra* section I.A.4. Moreover, even if the MDT records were accurate, a review of them would not reveal whether (1) drivers actually took meal breaks but perhaps did not record them; (2) the specific reasons why drivers did not take meal breaks on a particular day; and (3) whether the Company paid drivers meal premiums for those occurrences[13]—all of which is "essential" to determining liability. *Id.*

On the other hand, Reddaway has presented considerable evidence showing that drivers are provided with and take compliant meal breaks daily; drivers throughout California do not feel pressured to miss meal breaks as Plaintiffs complain; and to the extent some drivers have foregone or taken late meal breaks, it was their choice to do so, for which there would be no meal premium liability. Comp. ¶ 27; *see White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1088-89 (N.D. Cal. 2007) (granting employer summary judgment on meal premium claim where evidence showed meal breaks offered but voluntarily not taken by employees).

### E.   The Meal Breaks Claim Is Atypical Of The Putative Class

Plaintiffs' meal break claim is atypical of the putative class because it is premised exclusively on the allegation that the drivers were too busy to take meal breaks; however, numerous drivers have not experienced the "customer pressures and managerial demands" of which Plaintiffs complain. Comp. ¶ 13 (drivers have always been able to take timely meal breaks; have never felt pressured to work through a meal break; have never missed a meal break; and have never been reprimanded for taking a meal break, even if it meant missing a customer appointment); s*ee also Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980) ("The typicality requirement is said to limit class claims to those fairly

---

[13] In falsely claiming that Reddaway does not pay break premiums (Motion 16:16-20), Plaintiffs blatantly ignore the fact that Plaintiff Montes has been paid meal premiums on 9 occasions. Croslin Decl. ¶13, 16.

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

1   encompassed by the named plaintiffs' claims.").

2          Moreover, the meal break claims of union drivers lack typicality with those

3   of nonunion drivers because both have distinct legal rights, which are not properly

4   adjudicated in the same class.  *See, e.g.*, *Cholakyan v. Mercedes-Benz, USA, LLC*,

5   281 F.R.D. 534, 557 (C.D. Cal. 2012) (noting that a different set of legal remedies

6   undercut the typicality of class claims); *Robbins v. O'Brien Corp.*, No. C-76-734

7   RHS, 1977 WL 42, at *2 (N.D. Cal. Feb. 15, 1977) (denying class certification on

8   typicality grounds for claims under the Labor Code because union employees had

9   had distinct legal rights and claims due to them being covered by a CBA).

10          Additionally, union and nonunion drivers have distinct legal remedies, which

11   also precludes a finding of typicality, because union drivers must grieve their meal

12   break claims via the CBA's mandatory grievance procedure, whereas nonunion

13   drivers cannot do so.  *See, e.g.*, *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, No.

14   12-cv-05064-JSC2015 WL 9480475, at *15 (N.D. Cal. Dec. 23, 2015) (denying

15   class certification on typicality grounds because class members had different legal

16   remedies); *Quinlan v. Macy's Corp. Servs., Inc.*, No. CV 12-00737 DDP (JCx),

17   2013 WL 11091572, at *2–3 (C.D. Cal. Aug. 22, 2013) (finding no typicality

18   because plaintiff, "as a union employee, asserts claims that the overwhelming

19   majority of purported class members may be barred from bringing in this court");

20   *see also Moses v. Avco Corp.*, 97 F.R.D. 20, 24 (D. Conn. 1982) (finding no

21   typicality amongst union and nonunion employees, noting that "inherent problems

22   exist with combining union and nonunion employees within one class").[14]

23

24   _____

25   [14] Although Plaintiffs argue that, if needed, their meal break claims can be divided
     into union and nonunion subclasses, such assertion is unavailing because
26   bifurcation (1) would render this case unmanageable, and Plaintiffs have not
     proffered a manageable trial plan for adjudication of union and nonunion subclasses
27   for their meal break claims; and (2) would be futile because union drivers have no
28   viable meal break claim against the Company.  See Lab. Code § 512(e) and (f).

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

McDermott Will & Emery
Attorneys At Law
Menlo Park

### F.   Plaintiff Montes Is An Inadequate Class Representative

Plaintiff Montes cannot adequately represent a meal break class because he previously adjudicated his individual meal break claim to a final and binding decision through the CBA's grievance procedures.[15] *See Astiana v. Ben & Jerry's Homemade, Inc.*, No. C10-4387 PJH, 2014 WL 60097, at *4 (N.D. Cal. Jan. 7, 2014) ("If the plaintiff lacks a claim in her own right, she cannot represent a class." (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974))).   Moreover, other than these instances, Montes, the union shop steward, has not submitted any other grievances for noncompliant meal breaks during his employment, which demonstrates he has not otherwise experienced any meal break violations during most of the class period.   Additionally, Montes' untrustworthiness about a material issue in the cases (i.e., alleging in his grievance he did not take meal breaks on two occasions when he in fact did take meal breaks on those occasions) renders him an inadequate class representative because his dishonesty poses a threat to absent class members.   *See, e.g.*, *Jovel v. Boiron, Inc*., No. 11-CV-10803-SVW-SHx, 2014 WL 1027874, at *2 (C.D. Cal. Feb. 27, 2014) (finding inadequacy due to plaintiff's conflicting deposition testimony on a material issue).

### G.   A Class Action Here is Neither Superior Nor Manageable

Under Rule 23(b)(3), Plaintiffs must show a "suitable and realistic plan for trial of class claims."   *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189

---

[15] On March 18, 2016, Montes filed a union grievance regarding meal breaks in which he sought premium pay for ten (10) occasions.   The Joint Labor Management Committee heard Montes' grievance and rendered a decision, awarding him penalty pay for eight (8) late lunches but denying penalty pay for the other two occasions because the Committee found that Montes took those two meal breaks.   On January 11, 2018, Montes filed a new grievance (which is pending) regarding Reddaway's meal period waiver agreement and filed an additional grievance in March 2018 for being interrupted by a customer during his meal break, for which he was paid a meal premium.   Montes has not filed any other grievances for noncompliant meal breaks.   Croslin Decl. ¶¶ 12-16.

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

(9th Cir. 2001); *see Duran v. U.S. Bank N.A.*, 59 Cal. 4th 1, 28–29 (2014).  As set forth fully in the Declaration of Robert Crandall (Reddaway's expert) and Defendant's Motion to Exclude Expert Testimony filed concurrently herein, a class action is neither superior nor manageable.  This is because Plaintiffs' trial plan relies almost exclusively on their expert report, which in turn relies heavily on the unreliable MDT records, and Plaintiffs present no plan to manage classwide liability and damages without a need for thousands of individual inquiries.  In fact, Plaintiff's admissions, Reddaway's driver declarations and deposition testimony show that the MDT records are unreliable evidence of whether meal breaks were provided or taken on a classwide basis and that there were divergent meal break and auto-deduct practices across the different terminals and throughout the class period—all of which necessitate individualized inquires in order to determine classwide liability.  *See, e.g.,* Crandall Decl. ¶¶ 4-7, 9-11, 15-16, 19, 22-23, 27-28, 39-66.  Thus, the MDT records alone without any scientific analysis, sampling or representative testimony cannot protect Defendant's due process rights to establish the absence of liability or damages to individual class members.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366 (2011).

### H.   **Plaintiffs' Derivative Claims Fail With Their Substantive Claims**

Plaintiffs have not shown that resolution of their substantive auto-deduct and meal break claims satisfies Rule 23, and thus, certification of their derivative claims for wage statement violations and failure to pay wages upon separation must also be denied.  *See, e.g.*, *Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486 JAK, 2012 WL 1366052, at *22 (C.D. Cal. Apr. 18, 2012); *Kilbourne*, 2015 WL 5117080, at *12 (same); *Kimoto*, 2008 WL 4690536, at *7 (same).

### IV.   **PLAINTIFFS' BELATED THIRD REST BREAK CLAIM SHOULD NOT BE CONSIDERED AND SHOULD OTHERWISE BE DENIED**

Plaintiffs' unjustified request to belatedly certify a third rest break claim via a Supplemental Motion for Class Certification ("Suppl. Motion") must be denied

because (1) there is no "new evidence" justifying Plaintiffs' delay; (2) they failed to give Reddaway fair notice of a third rest break claim; (3) they expressly abandoned their rest break claim; (4) they have not argued or established excusable neglect, which is the applicable legal standard; and (5) they have not met their burden nor submitted virtually any evidence, that their third rest break claim is certifiable.

### A.   There Is No "New Evidence" Justifying Plaintiffs' Delay

Plaintiffs argue that "recent class member testimony coupled with a reevaluation of Defendant's existing policies" now justify their seeking to certify a third rest break claim.  However, Reddaway's rest break policies have been in Plaintiffs' possession for over one year (Doshi Decl. ¶ 8), and Plaintiffs fail to explain why they were unable to sufficiently evaluate them during this time. Additionally, the "recent deposition testimony" referred to in Plaintiffs' Ex Parte is questionable because (1) it was elicited by Plaintiffs' counsel on cross examination from their own witnesses, who were prepped beforehand; (2) comprise less than .008% of the putative class; and (3) the alleged testimony is not part of the record nor cited anywhere in Plaintiffs' Suppl. Motion.  To the contrary, the testimony is insufficient to support certification because, of the 10 deponents, 3 did not even testify about rest breaks; 4 testified that they worked on average less than 10 hours a day, making them ineligible for a third rest break; and 2 testified that they have long known that they are entitled to third rest breaks.  Comp. ¶ 43.  Moreover, the ten drivers who were deposed only worked at 2 of the 16 terminals, thereby not making them representative of the class as a whole.  Doshi Decl. ¶ 11.  Thus, the class member testimony and Plaintiffs' "reevaluation of Defendant's existing policies" are not "new evidence" sufficient to justify Plaintiffs' belated attempt to seek certification of their third rest break subclass.

### B.   Plaintiffs Failed To Give Reddaway Fair Notice

Reddaway is entitled to fair notice of Plaintiffs' third rest break claim so that it can adequately respond, undertake discovery, and prepare for trial. *Bibo v. Fed.*

*Express, Inc.*, No. C07-2505 TEH, 2009 WL 1068880, *6 (N.D. Cal. Apr. 21, 2009) (citing *Conley v. Gibson*, 355 U.S. 41, 47–48 (1957), abrogated on other grounds).   Without fair notice, "class certification is inappropriate."   *Id.*   Here, Plaintiffs failed to give Reddaway fair notice of a third rest break claim because (1) third rest breaks are not mentioned in Plaintiffs' three complaints, whereas Plaintiffs' complaints specifically allege drivers were not provided with second meal breaks; (2) Plaintiffs have not mentioned nor explored third rest breaks in written discovery, despite their class representative testifying to having rest break issues over 8 months ago; (3) Plaintiffs sought no deposition testimony on third rest breaks until June 12, 2018, which was over 2 years after Plaintiffs filed their complaint, more than 2 months after filing their moving certification papers, and only 2 weeks before Reddaway's deadline for filing its opposition; and (4) Plaintiffs' 83 boilerplate putative class member declarations are silent on third rest breaks.   Doshi Decl. ¶¶ 7, 14; *see* Dkt. 67.   Based on the record, it is clear Reddaway lacked fair notice of Plaintiffs' third rest break claims such that Plaintiffs' belated request to certify it must be denied.   *See Cornn v. United Parcel Serv., Inc.*, No. C03-2001 TEH, 2005 WL 588431, at *10 (N.D. Cal. Mar. 14, 2005) (denying certification of pre-shift wage claim due to lack of fair notice where complaint included generic failure to pay wages claim but did not specifically allege that drivers "performed [work] prior to scheduled start times").

## C.   <u>Plaintiffs Expressly Abandoned Their Rest Break Claim</u>

Plaintiffs expressly abandoned their rest break claim when they represented to the Court and Reddaway that they did not seek to certify it.   *See* Motion 7 n. 2 (unequivocally stating they "are not seeking certification of the [rest break claim]").   Here, after 21 months of litigation, 6 extensions of the certification deadline, numerous rounds of written discovery and 15 depositions (Doshi Decl. ¶¶ 8, 9), Plaintiffs had more than sufficient time to investigate their rest break claim and seek certification thereof—none of which they did.   This was no oversight; it was a

MCDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK

strategic decision made by Plaintiffs to forego certification.  Plaintiffs should not be allowed to resurrect their rest break claim after intentionally abandoning it.[16]

### D.   Plaintiffs Fail To Argue Or Establish Excusable Neglect

Plaintiffs may only supplement their class certification briefing by demonstrating their delay in seeking certification of the rest break claim was the result of "excusable neglect." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010).  However, Plaintiffs do not argue excusable neglect and thus have not met their burden.  Regardless, Plaintiffs could not satisfy such burden because of (1) the undeniable prejudice to Reddaway, and (2) the length of Plaintiffs' delay and its impact on the proceedings.  *Id.*; *cf. Munoz v. InGenesis STGi Partners, LLC*, No. 14-cv-1547-MMA-BLM, 2015 WL 13559891, at *5 (S.D. Cal. Dec. 23, 2015) (applying standard in class certification context).

First, Reddaway would be severely prejudiced if Plaintiffs are now allowed to seek certification of the third rest break claim.  By the time Plaintiffs raised the issue of third rest breaks on June 18, 2018, Reddaway already responded to 5 sets of written discovery; deposed both class representatives and 6 of 10 putative class members; and sent a team of attorneys to all 16 terminals throughout California to interview and obtain over 100 witness and manager declarations.  Doshi Decl. ¶¶ 8,

---

[16] *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) ("A party abandons an issue when it has a full and fair opportunity to ventilate its views . . . and instead chooses a position that removes the issue from the case."); *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *3 (N.D. Cal. May 30, 2014) (plaintiff "abandoned the claims for which he did not seek class certification"), class decert'd in 2014 WL 5794873 (N.D. Cal., Nov. 06, 2014; *Cortes v. Mkt. Connect Grp., Inc*., No. 14cv784-LAB (DHB), 2015 WL 5772857, at *8 (S.D. Cal. Sept. 30, 2015) (same); *La Parne v. Monex Deposit Co.*, No. 08-cv-00302-DOC-MLG, 2009 WL 10669751, at *2 n.2 (C.D. Cal. Dec. 22, 2009) (plaintiffs "abandoned" rest break claim for certification purposes by expressly stating so in reply brief); *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 906 n.21 (C.D. Cal. 2009) (plaintiff "abandoned a request for certification" of certain claims by omitting those claims in briefing).

McDermott Will & Emery
Attorneys At Law
Menlo Park

McDermott Will & Emery
Attorneys At Law
Menlo Park

11.   During the manager and driver interview, Reddaway did not ask about third rest breaks because Plaintiffs expressly abandoned and failed to give Reddaway fair notice of the claim.  If Plaintiffs' new claim is permitted, Reddaway will have to expend significant time and resources re-interviewing over 100 declarants and re-deposing the class representatives and putative class members about third rest breaks.  *Id.* ¶ 18.  Second, Plaintiffs waited 21 months before bringing their third rest break claim.  *Id.* ¶ 9.  Should the Court now consider Plaintiffs' Suppl. Motion, the proceedings will be further delayed, as Reddaway will need sufficient time to conduct discovery and collect supplemental evidence on third rest breaks.  *Id.* ¶ 18. Moreover, Plaintiffs' reason for delay is meritless, because Plaintiffs had almost 2 years to investigate a third rest break claim, yet fail to explain why they did not do so.  *Id.* ¶ 12.  Simply put, Plaintiffs' failure to investigate is not excusable neglect.

### E.   Plaintiffs Have Not Established Any Rest Break Violations

Finally, Plaintiffs argue their third rest break claim is suitable for class treatment because Reddaway "lacked" a third rest break policy until 2017.  This is untrue.  In 2017, Reddaway circulated a meal and rest period *reminder* that recapped and reinforced its requirement that all union and nonunion drivers take their breaks—including third rest breaks, which were expressly communicated to drivers by local management throughout the class period.[17]  Comp. ¶ 41.[18] Additionally, Reddaway and the union expressly intended for the CBA to encompass third rest breaks, and thus have maintained a practice of doing so

---

[17] Contrary to Plaintiffs' contention, this is notably different than *Cornn v. United Parcel Serv., Inc*., No. C03-2001 TEH, 2005 WL 588431, at *12 (N.D. Cal. Mar. 14, 2005), where defendant presented no evidence of advising its drivers of their third rest break rights and defendant's timekeeping system prevented drivers from recording a third rest break.  Here, Reddaway has presented evidence that drivers not only know about their third rest breaks but actually take them.  Comp. ¶¶ 43-45.
[18] To the extent the Court is inclined to consider certifying Plaintiffs' third rest break claim, Reddaway respectfully requests that it be provided sufficient time to conduct a California-wide investigation into the merits of this claim.

McDermott Will & Emery
Attorneys At Law
Menlo Park

1   throughout the class period.  Paffenroth Decl. ¶¶ 6-8.  As such, Plaintiffs' reliance

2   on *Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129 (2012), is misplaced,

3   because Reddaway does not lack a third rest break policy or practice, despite it not

4   being memorialized prior to 2017.[19]  To the extent Plaintiffs dispute whether

5   Reddaway's third rest break policy was sufficiently communicated to drivers at the

6   terminal level, such argument demonstrates that Plaintiffs' rest break claim is not

7   suitable for class treatment, as the only way to ascertain this information would be

8   via individualized testimony from each of the drivers.[20]

9        Furthermore, Plaintiffs do not present any evidence of classwide rest break

10  liability but instead rely only on supplemental declarations from Montes and

11  Barrios—both of which are contradicted by their prior deposition testimony and by

12  manager declarations showing that drivers at their terminals (Fontana and San

13  Fernando Valley, respectively) have been advised of their right to third rest breaks

14  throughout the class period and have been doing so.  Montes Depo. 80:6-14;

15  Barrios Depo. 211:3-17; Comp. ¶¶ 43-45.  In contrast, the available evidence in the

16  existing record shows drivers from at least 7 of 16 terminals know about their

17

18  [19] Plaintiffs' reliance on *Bradley* also overlooks the many subsequent decisions

19  holding the lack of a written policy alone is insufficient to support class
    certification, including *Alfred v. Pepperidge Farm, Inc*., 322 F.R.D. 519, 550 (C.D.

20  Cal. 2017), *modified*, 2017 WL 5665019 (C.D. Cal. July 13, 2017).  Plaintiffs
    erroneously rely on *Alfred* to establish certification of their rest break claims, even

21  though this Court denied certification thereof on predominance grounds despite

22  defendant not having a written rest break policy.  322 F.R.D. at 550; *see Vasquez v.
    First Student, Inc*., No. 2:14-CV-06760-ODW, 2015 WL 1125643 (C.D. Cal. Mar.

23  12, 2015) (same); *In re Taco Bell Wage & Hour Actions*, No. 07-cv-1314 LJO

24  DLB, 2012 WL 5932833, at *10–11 (E.D. Cal. Nov. 27, 2012), *adopted*, 2013 WL
    28074 (E.D. Cal. Jan. 2, 2013) (same).

25  [20] Accordingly, Plaintiffs' assertion is inaccurate that damages can be determined

26  solely from reviewing records that show the number of shifts worked over 10 hours
    (Dkt. 69, 17:12-22); to the contrary, such records would not reveal whether drivers

27  were sufficiently advised of their third rest break rights or took their third rest

28  breaks, which is the crux of Plaintiffs' third rest break claim.

entitlement to third rest breaks, and take them.  Comp. ¶ 43.  In similar cases, courts routinely deny certification where a rest break claim is premised solely on a written policy and the class representatives' self-serving declarations.  *See Cummings v. Starbucks Corp.,* No. 12–cv–06345–MWF(FFMx), 2014 WL 1379119, at *23 (C.D. Cal. Mar. 24, 2014) (denying certification of rest break claim based on "facially defective" policy where plaintiff's testimony was the only evidence of rest break violations); *Ordonez v. Radio Shack, Inc.*, No. CV 10-7060-CAS (JCGx), 2013 WL 210223, at *11 (C.D. Cal. Jan. 17, 2013) (denying certification where defendant offered "testimony that despite its [facially defective] written policy, putative class members were granted rest breaks in accordance with California law").[21]

## V. CONCLUSION

For the foregoing reasons, Reddaway respectfully requests that the Court deny Plaintiffs Motion for Class Certification, and Plaintiffs' Supplement Motion for Class Certification, in their entirety.

Dated:  July 30, 2018               McDERMOTT WILL & EMERY


                                    By:        */S/ Ronald J. Holland*
                                               RONALD J. HOLLAND
                                               PANKIT J. DOSHI
                                               LAUREN A. ZIEGLER
                                               Attorneys for Defendant
                                               USF REDDAWAY INC.

---

[21] Plaintiffs also fail to establish their rest break claim is resolvable by common proof, as the available evidence shows that drivers took but did not record rest breaks on their handheld devices.  Comp. ¶45; Montes Depo. 69:21-23.  Courts have routinely denied certification in such cases because individual inquiries would be needed to determine rest break liability. *See, e.g.*, *Kimoto*, 2008 WL 4690536, at *6 (denying certification where there were unreliable rest break records and conflicting declaration testimony regarding rest breaks).

McDERMOTT WILL & EMERY
ATTORNEYS AT LAW
MENLO PARK