James R. Hawkins, Cal Bar No. 192925
Gregory Mauro, Cal Bar No. 222239
JAMES R. HAWKINS, APLC
9880 Research Drive, Suite 200
Irvine, California 92618
Telephone: 949.387.7200
Facsimile: 949.387.6676
Email: james@jameshawkinsaplc.com
        greg@jameshawkinsaplc.com

Attorneys for Plaintiff RICARDO I.
GOMEZ, Individually and on Behalf of
Other Members of the Public Similarly
Situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RICARDO I. GOMEZ, Individually and on Behalf of Other Members of the Public Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> USF REDDAWAY, INC., a OREGON Corporation, and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.2:16-cv-05572-JAK (FFM) <br> Hon. John A. Kronstadt <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION** <br><br> Date: September 17, 2018 <br> Time: 8:30 a.m. <br> Courtroom 10B |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..........................................................................................1

II.  ANALYSIS ...................................................................................................2

    A.   **Common issues predominate on Plaintiffs' auto-deduct claim.** ......2

       1.   The Time Adjustment Forms do not vitiate the auto-deduct policy. .....2

       2.   Defendant's policy is applied uniformly across terminals. ..................2

       3.   The MDT records are reliable, and Defendant cannot shift its
recordkeeping burden to its employees. ...............................................3

       4.   Defendant fails to distinguish cases where auto-deduction classes
were certified. .........................................................................................5

    B.   **Common issues predominate on Plaintiffs' meal break claim.** ......6

       1.   Section 512(e)-(f) does not apply. .........................................................6

       2.   Defendant does not address its uniform failure to pay meal period
premiums. ................................................................................................8

       3.   Defendant is required to keep accurate records of meal periods. .........8

    C.   **Plaintiffs' third rest period class should be certified.** ..................11

       1.   Defendant was not prejudiced by any delay. ......................................11

       2.   Defendant's argument regarding the merits must be disregarded. ....12

    D.   **Defendant's evidentiary objections should be overruled.** ...........13

    E.   **Union versus nonunion issues are immaterial.** ............................15

    F.   **Plaintiffs' derivative claims are also certifiable.** ..........................16

V.   CONCLUSION ..........................................................................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

*ABM Industries Overtime Cases*
     19 Cal.App.5th 277 (2017)............................................................................ 6

*Bragg Live Foods, Inc. v. Eco Action SDN BHD*
     2016 WL 7446915
     (C.D. Cal., Apr. 29, 2016, No. CV158261DSFJPRX)................................. 13

*Blackwell v. SkyWest Airlines, Inc.*
     245 F.R.D. 453, 467 (S.D. Cal. 2007)....................................................... 4

*Brewer v. General Nutrition Corporation*
     2015 WL 5072039 (N.D. Cal., Aug. 27, 2015)................................................ 9

*Brinker v. Superior Court*
     53 Cal.4th 1004 (2012) ...................................................................... 9, 10

*Briseno v. ConAgra Foods, Inc.*
     844 F.3d 1121, 1127–28 (9th Cir. 2017)........................................................ 11

*Bufil v. Dollar Fin. Grp., Inc.*
     162 Cal.App.4th 1193 (2008)..................................................................... 12

*Cicairos v. Summit Logistics, Inc.*
     133 Cal.App.4th 949 (2005)......................................................................... 3

*Coalition for a Sustainable Delta v. John McCamman*
     725 F.Supp.2d 1162 (E.D. Cal. 2010).......................................................... 13

*Coleman v. Jenny Craig, Inc.*
     2013 WL 6500457
     (S.D. Cal., Nov. 27, 2013, No. 11CV1301-MMA DHB) ............................ 14

*Collins v. Lobdell*
     188 F.3d 1124 (9th Cir. 1999)...................................................................... 15

*Cornn v. United Parcel Service, Inc.*
     2005 WL 588431 (N.D. Cal., Mar. 14, 2005, No. C03-2001 TEH) ............ 12

*Dilts v. Penske Logistics, LLC*
      267 F.R.D. 625 (S.D. Cal. 2010)..................................................................5, 6

*Joson v. Permanente Med. Grp., Inc.*
      2012 WL 726307
      (N.D. Cal., Mar. 1, 2012, No. C 11-01018 JW).......................................15-16

*Kimoto v. McDonald's Corps.*
      2008 WL 4690536
      (C.D. Cal., Aug. 19, 2008, No. CV 06-3032PSGFMOX) ........................9, 10

*Lee v. Pep Boys-Manny Moe & Jack of California*
      2015 WL 9480475
      (N.D. Cal., Dec. 23, 2015, No. 12-CV-05064-JSC) ....................................15

*Morillion v. Royal Packing Co.*
      22 Cal.4th 575 (2000)........................................................................................8

*Moses v. Avco Corp., Avco Lycoming Div.*
      97 F.R.D. 20, 24 (D. Conn. 1982).................................................................15

*Ghazaryan v. Diva Limousine, Ltd.*
      69 Cal.App.4th 1524 (2008)..............................................................................3

*Lubin v. Wackenhut Corp*
      5 Cal.App.5th 926 (2016)................................................................................12

*Meyer v. Irwin Industries, Inc.*
      723 F.Supp.2d 1237 (C.D. Cal. 2010)............................................................12

*Nguyen v. Baxter Healthcare Corp.*
      275 F.R.D. 596 (C.D. Cal. 2011) .....................................................................5

*Perez v. Alta-Dena Certified Dairy, LLC*
      2018 WL 3341780 (9th Cir., July 9, 2018, No. 17-55082)............................12

*Purnell v. Sunrise Senior Living Management, Inc.*
      2012 WL 1951487
      (C.D. Cal., Feb. 27, 2012, No. SA CV10-00897 JAK.....................................9

iii

*Quinlan Macy's Corporate Services, Inc.*
    2013 WL 11091572
    (C.D. Cal., Aug. 22, 2013, No. CV1200737DDPJCX) ............................... 15

*Ramirez v. United Rentals, Inc.*
    2013 WL 2646648
    (N.D. Cal., June 12, 2013, No. 5:10-CV-04374 EJD ..................................... 3

*Rojas-Cifuentes v. ACX Pac. Northwest Inc.*
    2018 WL 2264264, at *11
    (E.D. Cal., May 17, 2018, No. 214CV00697JAMCKD ................................ 9

*Sali v. Corona Regional Medical Center*
    889 F.3d 623, 632 (9th Cir. 2018) .......................................................... 10, 13

*Sperry v. Securitas Security Services, USA, Inc.*
    2014 WL 1664916 (N.D. Cal., Apr. 25, 2014) .............................................. 7

*Stambolian v. Novartis Pharmaceuticals Corp.*
    2013 WL 6345566
    (C.D. Cal., Dec. 6, 2013, No. CV 12-04378 BRO FMOX) .......................... 14

*Troester v. Starbucks Corporation*,
    ___ P.3d ___, 2018 WL 3582702 (Cal., July 26, 2018, No. S234969) .......... 8

*Vaquero v. Ashley Furniture Industries, Inc.*
    824 F.3d 1150 (9th Cir. 2016) ............................................................. 11, 14

*Wilson v. TE Connectivity Networks, Inc.*
    2017 WL 1758048 (N.D. Cal., Feb. 9, 2017, No. 14-CV-04872-EDL) ..... 5, 6

**STATUTES & RULES**

8 C.C.R. §11040(7)(A)(3) ........................................................................................ 9

Cal. Labor Code 512(a) ........................................................................................... 7

Cal. Labor Code 512(e)-(f) ................................................................................... 6, 7

Cal. Labor Code 514 ............................................................................................... 7

IWC Wage Order 9-2001 at §7(A)(3) ...................................................................... 9

**REPLY**

## I.   INTRODUCTION

Defendant USF Reddaway presents no cognizable argument why this case is not suited for class certification. The relevant facts are established by the evidence in support of Plaintiff's motion:

- Defendant has a uniform policy that deducts meal breaks for every putative class member on every shift;
- Defendant makes no effort to verify whether meal breaks were actually taken;
- The only way to reverse or cancel an automatic deduction subjects the requester to discipline;
- Defendant does not pay meal period premiums for missed meal breaks;
- Defendant does not have a known policy regarding third rest periods for shifts over 10 hours.

Because Defendant cannot rebut these simple matters, it instead muddies the water by submitting *3,381* pages of arguments, objections, declarations, exhibits, and testimony, none of which can disprove the above facts. Much of Defendant's opposition is concentrated on proving that its business records – on which it relies to control its operations – are unreliable. Defendant relies on its Drivers' records to confirm that its packages are being delivered and picked up, yet it claims that these very same records cannot be trusted to confirm whether its Drivers were taking breaks. Defendant has intentionally placed the burden on its Drivers to keep all the records that are vital to its business, but now asserts that, contrary to its records maintenance obligations under California law, it cannot be held liable because of unreliable records.

Defendant cannot defeat class certification under this set of facts, which would send a dangerous message to California employers that employers can and, in fact, should keep inaccurate records of meal breaks. Such unlawful practices cannot reward companies who shun their responsibility to keep accurate records.

1

## II.   ANALYSIS

### A. Common issues predominate on Plaintiffs' auto-deduct claim.

1. The Time Adjustment Forms do not vitiate the auto-deduct policy.

Defendant first argues that individualized issues preclude certification of the auto-deduct claim based on the inaccurate premise that Drivers can submit a Time Adjustment Form ("TAF") to reverse the auto-deduction. However, Defendant fails to address its uniform policy that subjects Drivers to discipline for submitting this form unless a supervisor has required or caused the missed meal period. (Exs. 3, 4.) Because any attempt by a Driver to correct the auto-deduction subjects him to discipline, there is no effective way for a Driver to correct an inaccurate deduction.

Further, Defendant's argument that its TAFs are reliable but the MDT records are not is incongruous. Both are the responsibility of the Drivers and required by Defendant's policies to be completed accurately. However, only the TAFs subjects Drivers to discipline. Accordingly, if the accuracy of one set of records casts doubt on the accuracy of the other, the MDT records are more likely to be accurate.

2. Defendant's policy is applied uniformly across terminals.

Defendant's argument that different terminals cancel the auto-deduct mechanism in different ways is a complete red herring. Regardless of how the auto-deduction of 1% of all required meal periods is reversed/cancelled, such reversal/cancellation is not the issue. No reversed or cancelled auto-deductions will be included in the class members' damages, except to the extent that a meal period premium was not paid for the non-compliant meal period. Whichever method a terminal uses to reverse or cancel an auto-deduction, whether by turning it off or manually adding 30 minutes, this has absolutely no bearing on whether a meal period class should be certified in order to recover for the 99% of auto-deductions that are not reversed or cancelled.

Likewise, not only are the Drivers' manual punches and properly-deducted breaks not dependent on location, but these occurrences also have no bearing on whether common issues predominate. Compliant breaks will simply be excluded

from the class members' damages because such occurrences are not violations.

Finally, Defendant's citation to *Ramirez v. United Rentals, Inc*., 2013 WL 2646648 (N.D. Cal., June 12, 2013, No. 5:10-CV-04374 EJD) does not help it. The defendant there had no company-wide auto-deduction policy. *Id*. at *1 ("Despite the lack of a formal policy, many branch managers configured the company timekeeping software…to automatically deduct 30 minutes each from the time a driver actually logged each day.") Here, in contrast, Defendant indisputably had a company-wide auto-deduction policy.

   3.   <u>The MDT records are reliable, and Defendant cannot shift its recordkeeping burden to its employees.</u>

Defendant's policy required Drivers to record meal periods on their handheld devices. (Ex. 1 [Croslin 31:23-32:11]; Ex. 5; Ex. R-5 ["time out and time back in for meal periods must be recorded using [the handheld device] or a P&D trip manifest …".) It is not a defense to class certification when a lapse in policy has caused Defendant's records to not reflect all meal periods. An employer may not use any shortcomings in its own records to resist employee wage claims. (*Ghazaryan v. Diva Limousine, Ltd.* 69 Cal.App.4th 1524, 1536, fn. 11 (2008) ; *Cicairos v. Summit Logistics, Inc.* 133 Cal.App.4th 949, 961 (2005) ["'[W]here the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee.'"].)

Further, the evidence submitted by Defendant refutes this assertion. Defendant's current-employee declarants admit that, on the occasions when the handheld devices malfunctioned or were not available, they were instructed to contact dispatch (Def.'s Decs., Dkt No. 73-12, e.g., Ex. 33 ¶ 12, Ex. 38 ¶ 15, Ex. 42 ¶ 14, Ex. 46, ¶ 26) or record the breaks on the paper log (Def.'s Decs. Dkt No. 73-12, e.g., Ex. 48 ¶ 12, Ex. 56 ¶ 15).[1] In other words, even if the device malfunctions, Defendant has records of

---

[1] In addition, the declarations submitted by Defendant are vague and ambiguous in that they are generally phrased in the present tense without stating they were allowed breaks during the class period under a policy providing for such breaks.

the meal periods. Notably, Defendant itself relies on the handheld devices to operate its business. (Ex. 1 [Croslin 31:23-32:11].)

Defendant argues that individual issues predominate, but each alleged individual issue either is remedied by Defendant's own computerized records, is completely irrelevant, or simply goes to damages.  Defendant's argument that individual driver testimony would be required is incorrect as follows:

- Which meals were improperly deducted: As explained above, Defendant's MDT records can be compared with the pay records to determine which meals were auto-deducted without actually being taken.
- Whether Drivers reported missed meal breaks to "local management, as required": This is immaterial. If a missed meal period was reported and cured (as it should be) it will be notated by a "Y" (in cases of "cancellation") or a "1" (in cases of manual addition of time) in the notes column of Defendant's Kronos records, as Defendant itself explains.[2] (Oppo 5:2-14.)
- Whether the meal period was "subject to auto-deduction": All shifts were subject to an auto deduction.  Again, Defendant's MDT records can be compared with the pay records to determine which meals were auto-deducted without actually being taken.
- Whether and how the terminal manager addressed the auto-deduction: This is immaterial. If a missed meal period was reported, it will be identified in the notes column of Defendant's Kronos records, as Defendant itself explains. (Oppo 5:2-14.)

Defendant's position is directly contradicted by its own authority. Defendant cites *Blackwell v. SkyWest Airlines, Inc.,* 245 F.R.D. 453, 467 (S.D. Cal. 2007), where the court held that individual issues predominated because "there [were] incomplete records to determine whether meal periods were taken, and, if so, for how long." Here, there are records to determine whether meal periods were taken, and, if so, for how long. The record is clear that Defendant had a uniform policy of auto deduction and a uniform policy of requiring employees to record meals.

---

[2] Of course, these cancellations/reversals still result in a meal period violation as Defendant did not pay meal period premiums for missed meal breaks. But as far as damage calculations, Defendant admits that its records reflect when the auto-deductions were cancelled/reversed.

Defendant cannot auto deduct time for meals then complain that its records are not accurate in an attempt to create individual issues. If this defense to certification succeeds, there is no incentive to keep accurate records because poor record-keeping means free labor. This defense at its heart is contrary to the public policies of California labor laws to counter these types of employee abuses by employers.

4. <u>Defendant fails to distinguish cases where auto-deduction classes were certified.</u>

Curiously, Defendant contends that *Nguyen v. Baxter Healthcare Corp.* 275 F.R.D. 596, 600-601 (C.D. Cal. 2011), was not an auto-deduct case. To the contrary, *Nguyen* is factually similar to this case. The court there found that the defendant "used software which automatically deducted one 30 minute meal break per shift from all employees' time, without regard to whether a first meal break was late or missed, or whether a second meal break was required on a shift of more than 10 hours." It also found that the defendant "never paid out extra pay for a late or missed meal during the class period." *Id.* Although *Nguyen* involved production-line employees who took meal breaks at the same time, the salient facts that a 30-minute meal was automatically deducted from each employee's time and the defendant never paid a premium for late or missed meals are identical to the facts here.

Next, Defendant argues that *Wilson v. TE Connectivity Networks, Inc.* 2017 WL 1758048 (N.D. Cal., Feb. 9, 2017, No. 14-CV-04872-EDL), and *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 635 (S.D. Cal. 2010), are distinguishable because, in those cases, there was no mechanism to cancel the auto-deducted meal periods. Here, however, although there is a mechanism to cancel the auto-deducts, Defendant instructed Drivers that, if they attempted to use this mechanism, they would be **"subject to disciplinary action."** (Exs. 3, 4.) Accordingly, because any attempt by a Driver to correct the auto-deduction subjects him to discipline, there is no material distinction between this case and the policies at issue in *Wilson* and *Dilts*.

Defendant cites to the evidence that the TAFs were used at all is proof that it had

"a comprehensive approach to canceling the auto-deduct where a driver informs the Company they [sic] did not get their [sic] meal period." But Defendant admits this "comprehensive approach" was used for only 1% of required meal periods. (Oppo 5:23-28.) This evidence shows the system was not effective. In *ABM Industries Overtime Cases,* 19 Cal.App.5th 277, 288 (2017), the court held that "evidence provided [by an expert] that a mere 5,625 of the 1,836,083 time entries for ABM Workers he investigated (0.3 percent) contained adjustments to pay calls into question the efficacy of ABM's asserted 'timesheet maintenance' procedure." Likewise, here, it is not surprising that only 1% of auto-deducted meals have been reversed because Defendant's policy requires jumping through several administrative hoops and exposing the reporting Driver to discipline.

Notably, *ABM Industries* also held that the defendant's failure to "generate exception reports for missed meals periods" further "call[ed] into question the efficacy of ABM's asserted 'timesheet maintenance' procedure." *ABM Industries Overtime Cases,* 19 Cal.App.5th at 288. Similarly, here, Defendant's payroll manager admitted Defendant does not audit meal period deductions at the corporate level. (Ex. 2 [Whitfield 54:23-55:1].) And even though individual terminals are "supposed to perform" an audit of meal periods, the payroll manager had never seen such an audit. (Ex. 2 [Whitfield 55:2-17].) Regardless, even if an individual terminal performed a meal period audit, Defendant's policy requires terminals to disregard any discrepancies in auto-deductions for Drivers. (Ex. 6.) Accordingly, just like in *ABM Industries,* Defendant's contention that it has a "comprehensive approach" to curing improper auto-deductions is contradicted by the evidence.

**B. Common issues predominate on Plaintiffs' meal break claim.**

  1. Section 512(e)-(f) does not apply.

Defendant argues that Plaintiffs' meal break claim[3] should not be certified

_____

[3] This defense does not apply to the remainder of Plaintiffs' claims or to nonunion class members.

because of its alleged affirmative defense under Labor Code § 512(e)-(f). However, this defense does not defeat certification of the meal period claim because it itself is susceptible to common proof. Further, this merits-based argument is improper at certification. If certification is granted, Defendant may present a common defense as to all union Drivers on this basis.

Regardless, however, the affirmative defense lacks merit because the CBAs do not meet the requirements of § 512(e). Labor Code § 512(a) requires an employer generally to provide "a meal period of not less than 30 minutes" after an employee has worked five hours. Subdivision (e)(2) of that section provides that subdivision (a) does not apply if, inter alia, "a regular hourly rate of pay not less than 30 percent more than the state minimum wage rate."

Here, the rate of pay of the union putative class members was not more than 30% over the minimum wage because Defendant automatically deducted meal period(s) from each day's paid time regardless of whether a meal period was taken. This policy resulted in employees receiving no wages for time worked. In other words, Defendant did not pay 30% above the minimum wage for the time that employees were automatically clocked out but still working. See *Sperry v. Securitas Security Services, USA, Inc.,* 2014 WL 1664916, at *4 (N.D. Cal., Apr. 25, 2014).

For example, in *Sperry*, the court analyzed parallel language in Labor Code § 514, which makes overtime requirements inapplicable to workers covered by a CBA with the same provisions regarding the regular rate of pay as § 512(e). *Id.* at *4. The plaintiff argued that since the defendant did not compensate her at all for four hours of sleep time every 24-hour shift, she was not paid 30% over the minimum wage for those hours. The court held, "Accordingly, it does not matter that Sperry's $17.44 wage and the CBA's stated minimum wage both exceed the 130% threshold; because SUSA improperly withheld payment for her sleep time, and because California law requires that employees be compensated for each hour worked without regard to average compensation, the CBA failed to provide 'a regular hourly rate of pay for

<hr>

7

those employees of not less than 30 percent more than the state minimum wage.'"" *Id.*; see *Troester v. Starbucks Corporation*, ___ P.3d ___, 2018 WL 3582702, at *10 (Cal., July 26, 2018, No. S234969); *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 585 (2000) (the time during which "'the employee is suffered or permitted to work'" encompasses the time during which the employer knew or should have known that the employee was working on its behalf).

   2.  <u>Defendant does not address its uniform failure to pay meal period premiums.</u>

   Defendant does dispute that, as a matter of policy, Defendant did not pay meal period premiums. Defendant does not dispute that it has never voluntarily paid a meal period premium for a missed meal and has no pay code for a premium. In fact, Defendant addresses the failure to pay missed meal period premiums only in a footnote, where Defendant notes that it was forced to pay meal period premiums through Plaintiff Montes' grievance process. (Oppo Dkt No. 73, 21:27-28, fn 13.) In other words, Defendant claims it has paid meal period premiums on one occasion after the union's Joint Committee required it to do so. Obviously, if this is Defendant's best evidence of paying meal period premiums, it simply did not do so.

   As explained in Plaintiff's motion, liability turns on the issue of whether Defendant's policy of not paying a meal period premium for any missed break that was not requested by a supervisor was legal. Defendant acknowledges that it approved the cancellation/reversal of 4,463 auto-deductions without paying a premium. Accordingly, at a minimum, the class is certifiable for these premiums.

   3.  <u>Defendant is required to keep accurate records of meal periods.</u>

   Defendant has an obligation under the record-keeping requirements set forth in the Wage Order to track and document meal periods. IWC Wage Order 9-2001 §7(A)(3); 8 C.C.R. §11090(7)(A)(3) ("Meal periods … shall also be recorded"). Placing the "burden elsewhere would offer an employer an incentive to avoid its recording duty and a potential windfall from the failure to record" employee hours. *Brinker v. Superior Court*, 53 Cal.4th 1001, 1053, fn.1 (2012). Federal courts have

consistently held likewise. See *Brewer v. General Nutrition Corporation,* 2015 WL 5072039, at *3 (N.D. Cal., Aug. 27, 2015) (collecting cases). "Defendants may not flip [this] presumption on its head and put the onus on employees to prove they have been denied a proper meal period when there are no records of meal periods being provided." *Rojas-Cifuentes v. ACX Pac. Northwest Inc.,* 2018 WL 2264264, at *11 (E.D. Cal., May 17, 2018, No. 214CV00697JAMCKD).

Defendant offers no contrary authority. Instead of addressing this presumption regarding its records, Defendant again argues that meal period violations cannot be determined through its records. As explained above, Defendant's policy requires Drivers to record break times on their handheld devices. When the device malfunctions, Drivers are instructed to notify dispatch and/or record their activities on a paper log. And Defendant operates the rest of its business – the pickups and deliveries – via the handheld devices, so any allegation that the records generated therefrom are unreliable is disingenuous.

Defendant cites two cases to argue that cases with "unreliable" records of meal periods should not be certified, but they both pre-date *Brinker*. Accordingly, Defendant has failed to provide any authority on this point.

More importantly, there is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127–28 (9th Cir. 2017). Rather, courts should "balance the benefits of class adjudication against its costs." *Id*. at 1128. Brinker did not accept the employer's contention, like Defendant's contention here, that the determinations necessary to show why meal breaks were missed categorically precluded certification of a class action for missed meal breaks. *Brinker*, 53 Cal.4th at 1052 (conc. opn. of Werdegar, J.). In explaining that a variety of methods existed to render such actions manageable, the concurrence placed special emphasis on a presumption based on record-keeping obligations. *Id*. at pp. 1052–1054, 139 Cal.Rptr.3d 315, 273 P.3d 513 (conc. opn. of Werdegar, J.).)

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION

Further, the number of missed, short, or late meal periods that occurred because of Driver choice instead of pressure from Defendant is the sort of "employee-focused inquiry" criticized by the Ninth Circuit in *Sali v. Corona Regional Medical Center,* 889 F.3d 623, 632 (9th Cir. 2018). *Sali* held, "The types of activities [employees] generally engaged in during this period are certainly relevant, but the activities of any particular [employee] are not dispositive of whether he or she was under [the employer]'s control. Determination of this question does not depend on individualized factual questions and is capable of class-wide resolution. Accordingly, the district court abused its discretion by denying certification of the rounding-time class on the basis of predominance." Just like in *Sali,* the focus here is on Defendant's control, not on Drivers' individual activities.

Finally, the potential need for damages to be established on an individual basis does not defeat predominance and therefore is not a basis for denying class certification. *Vaquero v. Ashley Furniture Industries, Inc*., 824 F.3d 1150 (9th Cir. 2016). The Ninth Circuit recently reversed the denial of certification where the defendant argued that class members gave varying reasons for failure to record meal periods. The court held that these varying reasons would require individual damage calculations but "do not defeat a finding of predominance." *Perez v. Alta-Dena Cert. Dairy, LLC,* 2018 WL 3341780, at *1 (9th Cir., July 9, 2018, No. 17-55082).

**C. Plaintiffs' third rest period class should be certified.**

Defendant advances only two arguments in opposition to certification of this claim: 1) Plaintiffs delayed in seeking certification; and 2) Plaintiffs have not "established" a rest break violation.

1. Defendant was not prejudiced by any delay.

The Central District requires 28 days' notice for general motions. See Central District L-R 6-1. Defendant had 34 days' notice on Plaintiffs' Supplemental Motion for Class Certification. (Dkt No. 68, Order 6/26/18.) Defendant contends it lacked notice, but Plaintiffs' complaint has always included a failure to authorize and

permit all required rest periods. This theory has been incorporated in the scope of Plaintiffs' and Defendant's discovery efforts throughout the prosecution of this matter. Defendant's failure to dig into the allegations through contention interrogatories or other discovery methods cannot be blamed on Plaintiffs. As Defendant has long been aware of the existence of this claim, Defendant cannot – and indeed does not – claim any prejudice.

Most importantly, the policies at issue are clear; no third rest period was authorized or permitted until April 2017. Although Defendant now contends it was not on notice that it needed to defend against the third cause of action, its actions belie this assertion. For example, the phrase "rest break" appears 222 times in the deposition transcript of Montes. In fact, Defendant deposed Plaintiffs on all claims, as it should, including Plaintiffs' claim for failure to reimburse expenses, on which Plaintiffs ultimately decided not to move for certification. Indeed, Defendant even asserts that Plaintiffs "have been advised of their right to third rest breaks," citing deposition testimony. (Oppo Dkt No. 73, 29:13-15.)

2. Defendant's argument regarding the merits must be disregarded.

Defendant argues that Plaintiffs have not "established" its liability for failure to authorize and permit third rest periods. (Oppo Dkt No. 73, 28:13.) First, obviously, Plaintiffs need not prove the merits of their claim at this stage. Second, Defendant's contention that it surreptitiously communicated an otherwise-secret policy regarding third rest breaks to employees on an individual basis is not credible. Its policy could not be clearer, and this policy excludes third rest breaks. (Ex. S-1 ["Two 10-minute, paid rest periods, one during every four hours, are to be taken each full 8-hour working day."]; Ex. S-2 ["All employees shall be allowed a rest period approximately one-half way through the first (1st) half of their shift and another half way through the second (2nd) half of their shift."].)

Further, Defendant cannot defeat certification by contending it communicated a policy to *some* employees. *Bufil v. Dollar Fin. Grp.*, 162 Cal.App.4th 1193, 1199

(2008) ("the onus is on the employer to clearly communicate the authorization and permission [to take rest breaks] to its employees"). And "[a]necdotal evidence that some employees had rest breaks goes to damages and is not evidence of a uniform policy or practice." *Lubin v. Wackenhut Corp.,* 5 Cal.App.5th 926, 957 (2016).

Defendant fails to distinguish this case from *Cornn v. United Parcel Service, Inc.,* 2005 WL 588431, at *12–13 (N.D. Cal., Mar. 14, 2005, No. C03-2001 TEH), cited in Plaintiffs' motion. There, the court granted certification where UPS never told its drivers that they were entitled to a third rest break if they worked more than ten hours. Just as here, the court held that even if some workers took a third rest period, such a break was unauthorized, and workers could not waive their rest periods. *Id.* Further, just as in *Cornn*, damages here can be easily calculated by retrieving employee records for days in which class members worked over ten hours and using the class members' hourly rates to calculate total damages.

## D. Defendant's evidentiary objections should be overruled.

A district court is not limited to considering only admissible evidence in evaluating a class action is supported. *Sali,* 889 F.3d at 632 ("Inadmissibility alone is not a proper basis to reject evidence submitted in support of class certification"). Defendant's objections should be overruled, but even if the Court questions the admissibility of any of Plaintiff's evidence, this is not a valid basis to deny certification. Further, Defendant makes objects to the admissibility of several arguments in Plaintiffs' class certification motion (Dkt. No. 72, ¶¶ 1-7), "but legal memoranda are not evidence." *Bragg Live Foods, Inc. v. Eco Action SDN BHD,* 2016 WL 7446915, at *1, fn.2 (C.D. Cal., Apr. 29, 2016, No. CV158261DSFJPRX). Accordingly, these objections must be overruled.

To the extent these objections implicate the testimony of Defendant's payroll manager, Trisha Whitfield, they must also be overruled. Defendant's PMQ John Croslin, who was identified as the person most qualified on several topics regarding payroll, identified Ms. Whitfield as most knowledgeable regarding various topics

such as meal period premiums and timekeeping. (Ex. R-2 [Croslin 127:17-129:6, 161:16-162:6, 169:19-170:23].) Whitfield trained the current payroll manager, whose declaration Defendant submits as authoritative evidence on the same topics. (Dec. of M. Wilke, Dkt. No. 73-9 ["When I was hired, I was personally trained by the Payroll Manager, Trisha Whitfield…"].) It is disingenuous for Defendant to object to the qualifications of Ms. Whitfield while relying on those same qualifications to support Ms. Wilke's declaration.

In addition, Defendant's contentions that the evidence cited does not support the facts asserted goes to the weight, not the admissibility. *Coalition for a Sustainable Delta v. John McCamman*, 725 F.Supp.2d 1162, 1178 (E.D. Cal. 2010) (objection that cited testimony was mischaracterized overruled as going to weight, not admissibility). Likewise, Defendant's contentions that certain testimony in declarations is contradicted by deposition testimony also goes to the weight, not the admissibility. *Stambolian v. Novartis Pharmaceuticals Corp.,* 2013 WL 6345566, at *5 (C.D. Cal., Dec. 6, 2013, No. CV 12-04378 BRO FMOX) (noting that contradictory testimony goes to weight, not admissibility).

Moreover, many of the alleged contradictions between declarations and deposition testimony are simply untrue. For example, while Plaintiff Barrios testified that he knew about the auto-deduct policy and the form with which he could reverse it, he also testified that he knew that submitting this form would subject him to discipline. (Ex. R-3 [Barrios 140:9-24].) Similarly, Defendant contends Plaintiffs contradicted their declaration statements that they were never informed of a policy requiring a third rest period on shifts over 10 hours by testifying that they received the rest period policy. But the entire point of the third rest break claim is that Defendant's policy was silent regarding a third rest period. In other words, Defendant repeatedly objects to testimony as contradictory when it is not.

Similarly, Defendant objects to class member declarations as "cookie cutter" and contradictory. First, there is no rule that even identical declarations are incompetent

at this stage of the litigation. See *Coleman v. Jenny Craig, Inc.*, 2013 WL 6500457, at *3 (S.D. Cal., Nov. 27, 2013, No. 11CV1301-MMA DHB) ("the fact that the declarations are virtually identical does not ipso facto render them incompetent, particularly at this stage of the proceeding where the Court is applying a lenient standard of review").[4]  More importantly, that the declarations here do not vary goes to the commonality of the issues. The key facts are not subject to variability, and the faux-folksiness that peppers Defendant's class member declarations is unnecessary.

Finally, many of Defendant's objections are misleading because they fail to account for clarifications made by the deponents. For example, Defendant contends that Jonathan Boraks contradicted his declaration by testifying that he did not always record his breaks. (Dkt. No. 71, ¶ 8.) But Defendant fails to note that Mr. Boraks testified that if he could not record his breaks on his device, he recorded his breaks on a paper log or informed dispatch of his breaks. (Ex. R-4 [Boraks 217:25-218:25].) Several of Defendant's alleged contradictions similarly omit crucial details. (See Mauro Reply Dec. Exs. R-4 through R-11.)

**E. Union versus nonunion issues are immaterial.**

Defendant argues that union drivers have "distinct legal rights," but fails to enumerate any. Defendant also argues that union drivers have "distinct legal remedies" because of the CBAs' grievance procedure. To the contrary, Plaintiffs have asserted no rights that arise from the CBAs. Instead, all claims arise from statutory rights, and, consequently, no union member is required to exhaust agreement remedies. *Collins v. Lobdell,* 188 F.3d 1124, 1127 (9th Cir. 1999). "[E]xhaustion of remedies provided for in a collective bargaining agreement is not required even where a claim based on statutory rights also presents a claim under the agreement." *Id.*

Defendant's cited cases are all readily distinguishable. *Lee v. Pep Boys-Manny*

---

[4] Plaintiffs voluntarily withdraw the Declaration of J. Garcia. Although Plaintiffs do not know why this declarant did an about-face at his deposition, it seems he was fearful and changed his mind regarding testifying against his current employer.

*Moe & Jack of California* 2015 WL 9480475 (N.D. Cal., Dec. 23, 2015, No. 12-CV-05064-JSC), has nothing to do with unions or CBAs. *Quinlan Macy's Corporate Services, Inc.* 2013 WL 11091572 (C.D. Cal., Aug. 22, 2013, No. CV1200737DDPJCX), presents the inverse of the situation here. It held that, because 96% of class members were not unionized, and non-union employees were subject to arbitration, the plaintiff was not typical. *Id.* And in the cited case for the District Court in Connecticut, the claims were for racial discrimination in promotions, which involved questions of seniority for layoff arising out of the CBA. *Moses v. Avco Corp., Avco Lycoming Div.*, 97 F.R.D. 20, 24 (D. Conn. 1982).

Defendant's related allegations regarding Montes' adequacy because of his previous grieving to the union similarly lacks merit. The union grievance procedure has no preclusive effect. See *Joson v. Permanente Med. Grp., Inc.* 2012 WL 726307, at *3 (N.D. Cal., Mar. 1, 2012, No. C 11-01018 JW) ("because Plaintiff's claim arises from a federal antidiscrimination statute, the findings of the arbitrator are not preclusive. By its own terms, the grievance procedure in which Plaintiff participated was designed to settle grievances related to the terms of the agreement itself, not to adjudicate any statutory claims of allegedly aggrieved employees.")

### F.  Plaintiffs' derivative claims are also certifiable.

If the Court finds any of the above claims appropriate for class treatment, the claims for violations of the derivative claims will be proven in a single stroke. Defendant presents no argument in its opposition why these claims are not also appropriate for certification.

## V.    CONCLUSION

Plaintiffs request the Court grant Plaintiffs' Motion for Class Certification.

Dated: August 13, 2018                    JAMES R. HAWKINS APLC

By:/s/ Gregory Mauro
_____
JAMES R. HAWKINS, ESQ.
GREGORY MAURO, ESQ.
Attorneys for Plaintiffs

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2018 I electronically filed the foregoing:

- **PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION;**

- **DECLARATION OF GREGORY MAURO IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; and**

- **PLAINTIFFS' OBJECTIONS TO DEFENDANT'S EVIDENCE OFFERED IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

with the Clerk of the Court for the U.S. District Court, for the Central District of California using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.

Dated: August 13, 2018

By: /s/ Gregory Mauro
GREGORY MAURO, ESQ.